[No. 14709-9-I.   Division One.   August 11, 1986.]

THOMAS A. WIMMER, *Appellant,* v. BARBARA J. WIMMER, *Respondent.*

*James E. Kennedy* and *Kennedy, Schuck, Harris & Miller, P.S.,* for appellant.

*Barbara J. Wimmer,* pro se.

JOHNSEN, J.*—Thomas Wimmer appeals from an order of modification regarding child support requiring him to contribute part of the living and higher education costs for his 15½–year–old daughter, Krissie. During oral argument the father withdrew any objection to the trial court's order to increase his child support contribution until Krissie was 18 years old. We affirm.

The parents were divorced on July 17, 1972. Custody of the children was granted to the mother. The court ordered the father to provide "support, maintenance and education" until the child "reaches her majority, becomes married, self–supporting or is sooner emancipated, whichever is the earlier."

On September 21, 1978, a modification order increased the amount of father's child support with no other changes made in the original decree. On April 25, 1984, the court again modified its prior order by increasing the amount of child support and requiring the father to pay one–half of his youngest daughter's higher education.

The father appeals from this latter order. The father contends that the trial court erred when it ordered his child support to continue if Krissie elected to go to college. He maintains that there was insufficient evidence of a change not contemplated by the parties in the first modification hearing to support the second modification hearing's determination. Thus, he maintains that the court had no authority to order the further child support.

RCW 26.09.100 provides that

---

*Judge Oluf Johnsen is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

> In a proceeding for . . . child support, . . . the court may order either or both parents owing a duty of support to any child of the marriage dependent upon either or both spouses to pay an amount reasonable or necessary for his support.

Thus, a trial court, pursuant to RCW 26.09, may order support beyond a child's minority as long as that child is still dependent. *Childers v. Childers,* 89 Wn.2d 592, 575 P.2d 201 (1978). The *Childers* court held that the duty to provide post–high school education exists if there is no significant hardship on the parent and the child shows an aptitude. *Childers,* at 601. The court noted that the divorced parent, especially the noncustodial parent, will sometimes not willingly advance educational support for his children that he would otherwise have provided, but for the divorce.

> To terminate support when the parents are divorced creates a special disadvantage not shared by children whose parents remain together. If the father could have been expected to provide advanced education for his child, it is not unfair to expect him to do so after he has been divorced.

*Childers,* at 602 (quoting Washburn, *Post–Majority Support: Oh Dad, Poor Dad,* 44 Temp. L.Q. 319, 327, 329 (1971)). In *In re Marriage of Gimlett,* 95 Wn.2d 699, 704, 629 P.2d 450 (1981), the Supreme Court further extended *Childers* by holding that "[i]n compelling situations where post–majority support was not originally granted, courts have the power to modify the decree upon a showing of a substantial change of conditions" if the parent petitions the court before the child's emancipation. In *In re Marriage of Studebaker,* 36 Wn. App. 815, 816–17, 677 P.2d 789 (1984), this court held that, under *Gimlett,* there was a sufficient basis for a trial court's modification of a divorce decree to allow post–minority support for higher education where "the parties could not have predicted that [the children] would have . . . qualified for post–high school education [at a previous modification hearing]." The *Studebaker* court noted that there had been a substantial change of condi-

tions not contemplated by the parties since, at the time of the previous modification hearing, one child was having substantial difficulties at school and another child "was 11 years of age and was not the proper subject for consideration of post–high school education." *Studebaker,* at 817.

Pursuant to *In re Marriage of Studebaker, supra,* the court in this case did not abuse its discretion when it ordered the father to contribute to his daughter's higher education. First, with an income of $60,000 per year, the father sustains no significant hardship helping his daughter. In fact, the father, the paternal grandfather, and the mother all testified that they wanted their daughter to go to college. Next, like *Studebaker,* no one could have predicted at the first modification hearing that Krissie, then age 11, would overcome the difficulties she was having in school and show a propensity and desire to go to college. In addition, the trial court made a finding of fact that the daughter was clearly dependent after age 18 upon parental support and that she might elect to enter college. This finding was supported by substantial evidence. Thus, we hold that the court did not abuse its discretion when it provided for the future welfare of Krissie by ordering child support for higher education if she elected to go to school because there was sufficient evidence of a substantial change not contemplated by the parties at the time of the 1978 modification and substantial evidence of Krissie's dependency.

This holding is pursuant to the dissolution of marriage act, RCW 26.09.010 *et seq.,* which became effective August 16, 1973, and created a duty for both parents to support "dependent" children. We note, however, before the adoption of RCW 26.09, RCW 26.08.110 provided that child support could be ordered only for minor children. *Lang v. Lang,* 40 Wn. App. 758, 761, 700 P.2d 375 (1985). Under the reasoning of *Lang,* courts have no jurisdiction to award support for a child's higher education expenses under RCW 26.08.110 beyond minority no matter how meritorious the child's case may be. The age of majority before August 9,

1971, was 21 years old. On that date, RCW 26.28.010 became effective which reduced the age of majority for all purposes from 21 to 18 years old.

■ Therefore, pursuant to RCW 26.08.110 and RCW 26.28.010, the father's duty to support Krissie arguably terminated at 18 years since the decree was entered in the period between August 9, 1971 and August 16, 1973. However, the father failed to raise this issue before the trial court, and thus we need not consider it for the first time on appeal. *State v. Rodriguez,* 32 Wn. App. 758, 761, 650 P.2d 225 (1982). Nevertheless, even if the father had raised this issue, we note that the trial court had jurisdiction to order post–18 years old child support for higher education under the facts of this case, even though the dissolution decree was entered in 1972.

When the Legislature enacted RCW 26.28.010 and reduced the age of majority from 21 to 18 in 1970, it became possible for persons over 18 to marry, execute a will, vote, enter into contracts, consent to surgery, and sue and be sued. Unfortunately, the statute effectively deprived children of the protection of a modification hearing ordering parental support after age 18 for higher education or other emergency aid if they were in need of it. Except for that period between August 1971 and August 1973, some provision had always been available for higher education and emergency support: pre–1971 until 21 years old and post–1973 until a child was not "dependent".

We reason that it could not have been the legislative intent to deprive children of that right to higher educational and emergency support where needed for just those 2 years. In construing legislation, we presume the Legislature is familiar with past judicial interpretations and specifically the discrepancy here. *Glass v. Stahl Specialty Co.,* 97 Wn.2d 880, 887, 652 P.2d 948 (1982). We now conclude that through the 1973 marriage dissolution act, the Legislature cured the unintentional repeal in the 1971 act's protection regarding the rights of children to reasonable support from a parent after 18 for higher education and emergency pur-

poses. Therefore we may, for curative purposes, retroactively apply RCW 26.09 to those dissolutions granted in that short span of time between August 9, 1971, the date on which the age of majority was reduced to 18, and August 16, 1973, the date on which the dissolution of marriage act took effect.

Retroactivity is proper because neither party here has changed its position in reliance upon the previous law nor does retroactive application defeat the reasonable expectations of the parties. *In re Marriage of Giroux,* 41 Wn. App. 315, 320, 704 P.2d 160 (1985); *In re Santore,* 28 Wn. App. 319, 324, 623 P.2d 702 (1981). That the father has not relied on the previous law is demonstrated by his unawareness of the effect of RCW 26.28.010 and his failure to raise the issue. *See Santore,* at 325. In addition, although new legislation is presumed to apply prospectively, retrospective application will be given a legislative enactment when that intent is overtly expressed or *clearly implied* as it is here. *Baker v. Baker,* 80 Wn.2d 736, 741, 498 P.2d 315 (1972); *Lang,* at 762.

Thus, the trial court would not have erred if it had ordered child support for Krissie's higher education after her 18th birthday under RCW 26.08.110.

Judgment affirmed.

RINGOLD, A.C.J., and SWANSON, J., concur.

Review denied by Supreme Court December 2, 1986.