[No. 37571-7-I.   Division One.   April 21, 1997.]

*In the Matter of the Marriage of* CHERYL M. KELLY, *Respondent,* and KENNETH E. HANNAN, *Appellant.*

*Andrea V. Gilbert, William T. Lawrie,* and *Lawrie & Gilbert;* and *Timothy G. Edwards* and *Tim Edwards & Associates, P.S.*, for appellant.

*Loretta M. Fiori* and *Brian K. Fresonke,* for respondent.

COLEMAN, J. — Kenneth Hannan appeals a superior court order modifying his obligation to support his daughter, Miranda. Although Miranda's mother filed the modification petition while Miranda was a minor, Hannan argues that the court erred by failing to require Miranda's joinder when she became an adult because she then

became a necessary party. The court ordered that Hannan's monthly support payments be increased retroactively to the date of filing. In addition, the court ordered that Hannan pay 57.3 percent of Miranda's postsecondary educational expenses. Hannan argues that the court erred by not imposing a monetary cap on this postsecondary obligation. He also argues that the court erred by ordering him to reimburse the mother twice for her college expenditures in both the retroactive support and the postsecondary support orders. Hannan additionally claims that the court erred by failing to expressly require Miranda or her mother to contribute to the college expenses.

We hold that the court had jurisdiction to modify Hannan's child support obligation because Miranda did not become a necessary party when she turned eighteen. Because the obligation to pay a percentage of a child's educational costs is directly related to the child's needs, we also hold that no monetary cap was required. Hannan has failed to show that the trial court abused its discretion by overlapping his obligations. Except for a minor mathematical error, we affirm the modification order in its entirety.

Hannan and Cheryl Kelly dissolved their marriage on July 8, 1983. The decree awarded custody of their six-year-old daughter, Miranda, to Kelly. It also provided that Hannan pay $210 per month in child support "until the child has reached the age of eighteen or is sooner emancipated." Miranda subsequently excelled in high school, earning a 3.76 cumulative grade point average. In 1994, she was accepted for admission to Washington State University as an undergraduate.

In May 1995, Kelly filed a petition for support modification and postsecondary educational support. While the action was pending, Miranda turned eighteen and began her studies at WSU. In October 1995, the court found that Hannan's support obligation should be modified for the following reasons:

[x] The previous Order was entered more than two years ago and there has been a change in the income of the parents.

[x] Miranda Hannan is in need of post-secondary educational support because the child is in fact dependent and is relying upon the parents for the reasonable necessities of life.
. . . .

[x] There has been the following substantial change of circumstances since the Order was entered: Miranda was only 6 years old at the time of the Decree and now has aged and entered into college with a high GPA and graduated with honors from high school. Miranda's ability and aptitude for college could not have been known when she was 6 and this represents a substantial change of circumstance.

The court retroactively increased Hannan's monthly child support obligation to $462.95 from the date the petition was filed through August 1995. The court thus entered a $1,136.85 judgment against Hannan for back child support.

In addition, the court modified the original child support order by ordering Hannan to contribute 57.3 percent of Miranda's college expenses:

The parents shall pay for the post secondary educational support of the child. Post secondary support provisions are that the obligor/father shall pay 57.3 % of tuition, room & board, class fees, lab fees, books, transportation, health fees, hall dues, health insurance, lobby fees, copy costs, and school supplies. The child shall take out the Stafford loan granted to her. Additionally, the child shall make effort to obtain summer employment and her earnings are to be applied to her costs of attending college. She shall keep both parents fully informed of her grades, earnings from employment and efforts to obtain scholarships and grants . . . . Miranda must stay enrolled as a full-time student and be actively pursuing a course of study and must remain in good academic standing. The father's obligation shall terminate upon the child's 23rd birthday and may be suspended at any time the child is not in compliance with the requirements of this order. Mi-

randa Hannan shall apply for scholarship grants and student loans. She shall take out student loans offered to her each year up to 10 % of the total cost of her education. The parent's contribution shall be after Miranda Hannan's earnings, scholarships, grants, and loans.

No ceiling was placed on Hannan's postsecondary obligation. The court found that Kelly had already paid $2,863.15 for Miranda's tuition, fees, deposits, summer orientation, room and board, linens, and books. In ordering Hannan to reimburse Kelly for his 57.3 percent share of these expenditures, the court entered judgment against Hannan for $1,690.58. As Hannan correctly points out, this was a mathematical error—57.3 percent of $2,863.15 is $1,640.58. We thus reduce this judgment by $50.

■■ We must first decide whether the lower court lost its jurisdiction to modify child support because Miranda became a necessary party when she reached majority. Subject matter jurisdiction is a broad concept that courts will find absent only in "compelling circumstances, such as when it is explicitly limited by the Legislature or Congress." *In re Major*, 71 Wn. App. 531, 534, 859 P.2d 1262 (1993). Under the dissolution of marriage act, the superior court sits as a "family court" to adjudicate "the rights of the parties or their children regarding the determination or modification of . . . support[.]" RCW 26.12.010. Because of the court's broad grant of jurisdiction over support modification proceedings, we hold that when a parent files a petition before the child reaches majority, the court retains its jurisdiction after the child becomes an adult.

■ The court has jurisdiction to order postsecondary educational support for adult children. *Childers v. Childers*, 89 Wn.2d 592, 605, 575 P.2d 201 (1978). Even where child support is originally set to terminate upon the child's emancipation, courts have the power to modify the decree and order postmajority educational support in compelling circumstances. *Gimlett v. Gimlett*, 95 Wn.2d 699, 704, 629 P.2d 450 (1981). The court's jurisdiction over postmajority support disputes is not expressly limited. *See*

*Major*, 71 Wn. App. at 534. While the dissolution of marriage act is silent regarding the proper party to seek a modification of support for an adult child, there is no compelling reason to require the child's presence in the dispute. The Legislature has provided that a "party" may petition the court for child support modification. RCW 26.09.170(8)(b). We construe the word "party" to mean the individuals who divorced. Nowhere does the dissolution of marriage act preclude parents from seeking modifications when their children turn eighteen after the petition has been timely filed.

Moreover, because the court was able to afford complete relief to the parties in this case, Miranda was not a necessary party under CR 19(a). If the Legislature had intended to make adult children necessary parties to support proceedings, it could have easily expressed itself. We therefore hold that the lower court properly exercised its jurisdiction.

■■ Hannan next argues that the lower court abused its discretion by not placing a monetary cap on his postsecondary support obligation. Kelly argues that where a parent's obligation is directly related to the child's support needs, the court may order postsecondary support as a percentage of educational costs without imposing an upper limit. Because the support order here necessarily relates to Miranda's support needs, we hold that the court acted within its discretion in declining to place a ceiling on the amount of Hannan's obligation.

When child support is set at a percentage of the obligor parent's income, the amount must be related to both the noncustodial parent's ability to pay and the child's needs. *Edwards v. Edwards*, 99 Wn.2d 913, 918, 665 P.2d 883 (1983). Because the obligation to pay a percentage of one's income does not necessarily relate to the child's support needs, the *Edwards* court held that in such cases, "the trial judge should determine a maximum amount of child support that would be reasonable and needed in the future and set that amount as a ceiling above which the support payments cannot rise." *Edwards*, 99 Wn.2d at 919.

Unlike the order at issue in *Edwards*, Hannan's support obligation is inherently related to Miranda's postmajority support needs. But future increases in Hannan's obligation would not be directly related to his ability to pay. Hannan thus has a valid concern that Miranda's tuition and living expenses may increase to a point where he is unable to afford his obligation. But we believe that this concern can be addressed by allowing Hannan to bring a petition for modification as the circumstances change. If Hannan's ability to pay diminishes in the future, "modification of the award can be easily attained." *Edwards*, 99 Wn.2d at 919.

Trial courts have broad discretion to order postmajority educational support based on a percentage of educational costs. *See Wimmer v. Wimmer*, 44 Wn. App. 842, 723 P.2d 531 (affirming order that father pay one-half of daughter's education), *review denied*, 107 Wn.2d 1016 (1986). When the obligor parent's obligation is directly related to the child's needs, the rationale of the *Edwards* ceiling requirement is inapplicable. We thus hold that the lower court acted within its discretion by ordering Hannan to pay a percentage of Miranda's college expenses without imposing a maximum dollar amount.

We next turn to Hannan's assertion that the lower court failed to consider the statutory factors governing postmajority educational support awards. The Legislature has provided that:

> When considering whether to order support for postsecondary education expenses, the court shall determine whether the child is in fact dependent and is relying upon the parents for the reasonable necessities of life. The court shall exercise its discretion when determining whether and for how long to award postsecondary educational support based upon consideration of factors that include but are not limited to the following: Age of the child; the child's needs; the expectations of the parties for their children when the parents were together; the child's prospects, desires, aptitudes, abilities or disabilities; the nature of the postsecondary education sought; and the parents' level of education, standard of living, and

current and future resources. Also to be considered are the amount and type of support that the child would have been afforded if the parents had stayed together.

RCW 26.19.090(2). Because the court's findings reflect a consideration of all relevant factors, we find no abuse of discretion and affirm.

■ The court found that "Miranda's abilities and aptitude for college could not have been known when she was 6 [and the original decree was entered]." Where child support is originally established for young children, the child's subsequent showing of ability to attend college may be considered a substantial change of circumstances justifying a modification to provide postsecondary support. *See In re Studebaker*, 36 Wn. App. 815, 817, 677 P.2d 789 (1984); *Wimmer*, 44 Wn. App. at 845. In finding that Miranda's aptitude for college could not have been known when the parents divorced, the lower court sufficiently considered her parents' expectations while they were together.

Contrary to Hannan's assertion, the record also shows that the lower court considered the parents' level of education, standard of living, and resources. Evidence before the court included Kelly's affidavit detailing the parties' higher education and financial declarations and tax returns of both Kelly and Hannan. We must presume that the court considered all evidence before it in fashioning the order.

We also hold that the lower court considered the support Miranda would have received for college expenses had her parents stayed together. A child should not suffer because her parents are divorced. *Childers*, 89 Wn.2d at 602. The courts have broad discretion to award support in the child's best interest. The lower court could have reasonably concluded that the parents would have supported Miranda through college had they stayed together. Ideally, the court should have been more explicit in its consideration of RCW 26.19.090's factors. But because

Hannan has not shown that the trial court failed to consider them, we affirm the postsecondary support order.

Hannan next argues that the trial court abused its discretion by not ordering Kelly to contribute to Miranda's college expenses. In ordering the modified support, the trial court ordered the "obligor/father [to] pay 57.3 %" of Miranda's college expenses. While the remaining 42.7 percent is not expressly allocated as Kelly's responsibility, the previous sentence provides that "[t]he parents shall pay for the post secondary educational support of the child." The support order also provides that "[t]he parents' contributions shall be after Miranda Hannan's earnings, scholarships, grants and loans." We interpret these provisions as ordering Kelly to contribute 42.7 percent of the parents' obligation.

Even if the order is read as obligating only Hannan, it would still constitute a proper exercise of the court's discretion. The court may order "either or both parents" to pay for a child's postsecondary educational support. RCW 26.19.090(6); 26.09.100(1). Kelly, as Miranda's custodial parent, voluntarily paid for Miranda's first semester expenses before the support modification order was entered. The court could have reasonably concluded that ordering her payment of support was not necessary.

Hannan's next claim, that the order does not require Miranda to apply for student loans, is plainly contradicted by the provision that she "shall apply for scholarship grants and student loans[.]" While the order limits Miranda's duty to 10 percent of the total costs of her education, no discovered authority prohibits the court from limiting the child's contribution in this manner. The order specifically lists the expenses included in the "total costs of [Miranda's] education," and those amounts are easily calculated.

At the time the order was entered, Miranda had been offered an $868 Stafford loan. By providing that the parents' contribution "shall be after" Miranda's loans, the court intended that the $868 loan amount be deducted

from Miranda's total expenses before Hannan's 57.3 percent is calculated. Hannan claims that the court erred by not deducting the $868 before calculating the judgment to reimburse Kelly for payments she had already made. But Kelly paid those sums before Miranda received her loan. While the loan amount should be deducted before calculating Hannan's future obligations, we hold that the court acted within its discretion by not deducting the $868 before calculating the judgment against Hannan for Kelly's prior expenditures.

Hannan also challenges the order for failing to require that Miranda earn wages and for failing to deduct Miranda's 1995 earnings before calculating the judgment. There is no requirement that the court deduct a child's past earnings from a parent's postsecondary support obligation. While the order provided only that Miranda shall make "effort to obtain summer employment," the court need not condition support on the child's obtaining employment.

The lower court's judgment validly included Miranda's transportation expenses, health fees and insurance, hall dues, copy costs, lobby fees, and linens within the amount for which Kelly was awarded reimbursement from Hannan. While some of these expenses may be considered incidental to educational costs, the trial court has broad discretion to order postmajority support as it deems necessary and fair in the circumstances. *Childers v. Childers*, 89 Wn.2d 592, 601, 575 P.2d 201 (1978). Each expense listed in the order is sufficiently related to Miranda's postsecondary educational needs.

We must next decide whether the lower court improperly duplicated any of Hannan's support obligations. The trial court entered two orders: one for increased child support retroactive to the date the petition for modification was filed and another for 57.3 percent of Miranda's postsecondary educational support. Because the retroactive modification was calculated separately from the judgment to reimburse Kelly for her college-related expenditures, we affirm.

The two orders at issue cover separate and distinct obligations. The order retroactively modifying Hannan's support obligation through August 1995 increased his monthly payments from $210 to $462.95 per month. This amount was based on standard calculations from the parents' incomes. While the judgment against Hannan for his share of Kelly's college-related expenditures included some costs that Kelly had incurred during August 1995, Hannan has made no showing that the court considered any college-related expenses in calculating his retroactive support obligation at $462.95 per month.

■ Finally, Hannan claims that the court erred by failing to expressly require Miranda to comply with the following statutory provisions:

> The child must enroll in an accredited academic or vocational school, must be actively pursuing a course of study commensurate with the child's vocational goals, and must be in good academic standing as defined by the institution. The court-ordered postsecondary educational support shall be automatically suspended during the period or periods the child fails to comply with these conditions.

> The child shall also make available all academic records and grades to both parents as a condition of receiving postsecondary educational support. Each parent shall have full and equal access to the postsecondary education records as provided in RCW 26.09.225.

RCW 26.19.090(3), (4). Because these statutory conditions are independently imposed by operation of law, we hold that the lower court acted within its discretion.

The order here expressly requires Miranda to "keep both parents fully informed of her grades," reiterating the requirements of RCW 26.19.090(4). Moreover, it contains the requirements that Miranda "stay enrolled," "actively pursu[e] a course of study," and "remain in good academic standing." Even if the statute were interpreted to require more of the child, its authority is self-executing because it provides that support shall be "automatically suspended"

if the child fails to comply with the conditions. RCW 26.19.090(3). The statute does not require a postsecondary educational support order to expressly incorporate its provisions.

We decline to award attorney fees for this appeal. The issues that Hannan raised are at least debatable, and therefore the appeal is not frivolous under RAP 18.9(a). We also decline to award fees under RCW 26.09.140.

We affirm but modify the $1,690.58 judgment against Hannan to correctly reflect 57.3 percent of Kelly's $2,863.15 college-related expenditures. That judgment is thus reduced to $1,640.58.

GROSSE and COX, JJ., concur.

Review denied at 133 Wn.2d 1014 (1997).