72 P.3d 1130 (2003)
117 Wash.App. 711
Joy NEWELL, n/k/a Joy Bailey, Appellant,
v.
LaFrank NEWELL, Respondent.
No. 49799-5-I.
Court of Appeals of Washington, Division 1.
July 21, 2003.
Robert Helland, Attorney at Law, Tacoma, WA, for Appellant.
Theresa Mary Ahern, Attorney at Law, Chad Horner, Curran Mendoza PS, Kent, WA, for Respondent.
SCHINDLER, J.
Joy Bailey (formerly Newell) appeals the trial court's postsecondary education support order for the parties' daughter. Bailey contends that the court abused its discretion in not accurately determining income for LaFrank Newell, her former spouse. Bailey also challenges the percentage allocation between the parents for postsecondary education expenses. She argues that the court should have included overtime pay in its calculation of Newell's income and based on this higher income, allocated more of the college expenses to Newell. Bailey also contends that when the trial court changed the income amount to be imputed to her, it should have changed the percentage share of income. *1131 We conclude that although the child support schedule for postsecondary education support is advisory and not mandatory, the trial court must accurately calculate the parties' incomes and the presumptive proportional percentage share of income before deciding how to allocate postsecondary education expenses between the parents. We reverse and remand.

FACTS
When the parties divorced in October 2000, their daughter was a senior in high school. Because their daughter's post-high school plans were uncertain, the parties reserved the issue of postsecondary support. The court's order of child support provides, in part:
3.14 Post Secondary Educational Support
The right to petition for post secondary support is reserved, provided that [t]he right is exercised before support termination as set forth in 3.13.[1]
On June 4, 2001, Bailey filed a petition and declaration for modification of the child support order on the grounds that her daughter "is in need of postsecondary educational support because the child is in fact dependent and is relying upon the parents for the reasonable necessities of life".[2] In her declaration, Bailey stated that her daughter had been accepted to the University of Montana for admission in September 2001 and submitted cost information for the University of Montana, her pay stubs, her 2000 federal income tax return, proposed child support worksheets and a financial declaration stating that her net monthly wages from her employment as a security guard were $1,335.69.
In response, Newell agreed to contribute to his daughter's college education but objected to paying out-of-state tuition. He offered to pay up to one-half of the tuition and fees at the University of Washington for an in-state student, plus one-half of the costs of books, room and board as estimated by the University of Montana, minus any student loans received by their daughter'.
In his declaration, Newell stated that he was employed by the Boeing Company as an operations manager and his gross monthly net income was $5,920 with a net monthly income of $3,581. Newell arrived at the calculation of his net monthly income of $3,581 by multiplying his hourly rate by the number of work days in an average month.[3] He submitted several recent pay stubs, 1999 and 2000 federal income tax returns, a financial declaration, and proposed child support worksheets. Because Bailey had by then moved to Montana and was unemployed, Newell requested that the court impute monthly income to her, based on the child support guidelines, of $2,051 in addition to the monthly spousal maintenance payments of $750.[4] According to the worksheets and income calculations used by Newell, his proportional share of the combined net income was .561 and Bailey's was .439.
In reply, Bailey submitted two additional declarations. In the first, she requested that the court award postsecondary support based on the actual cost for an out-of-state student at the University of Montana and divide that amount in proportion to the parties' incomes.[5] In the second declaration, Bailey claimed that Newell had improperly calculated his income because overtime pay was not included. Relying on the most recent pay stub submitted by Newell, and the year-to-date earnings recorded on that pay stub, she calculated Newell's income by including all the overtime Newell had earned during the first six months of 2001. By this method, Newell's monthly gross income was $9,122.40 and his net income was $5,755.19.[6] This calculation included all the overtime Newell had worked during the first six months of 2001.[7] Bailey explained that her financial *1132 circumstances had changed since filing the petition because she had moved to Montana and was looking for work, but she calculated her income based on the salary she had earned in Washington plus her maintenance payments. According to Bailey's calculations, her monthly gross income was $2,345 and monthly net income was $1,964.01.[8] Newell's proportional share of the combined income was .746, and her share was .254.[9]
On November 9, 2001, a pro tem court commissioner heard oral argument and entered an order of child support for postsecondary education support. The court determined that Newell's net monthly income was $3,627.[10] This figure is Newell's hourly rate of $34 .424 multiplied by 2080 hours (40 hours multiplied by 52 weeks per year), minus deductions; it does not include overtime. The court used the child support guidelines and imputed monthly net income of $2,900 to Bailey.[11] Based on these calculations according to the child support worksheets signed by the pro tem commissioner, Newell's proportional share of the combined net income was 55.5 percent, and Bailey's share was 44.5 percent. The court ordered that:
[a]s long as the father has a spousal maintenance obligation to the mother he shall pay 55% of the tuition and fees and of the room and board for [the parties' daughter], starting Fall 2001. Said expenses shall be the lesser of the actual expenses or the similar expenses at the University of Washington ...
When spousal maintenance terminates, father's percentage increases to 65%-mother 35%.[12]
Thus, the amount to be paid for the year 2001 was the University of Washington in-state tuition amount and the University of Montana room and board amount. The court also ordered that the parties' daughter would be responsible for her books, supplies and personal expenses, and that any student loans or other money received should be applied to those expenses.[13]
Bailey filed a motion to revise the pro tem commissioner's order. She asserted that the court erred in determining both parties' incomes, inequitably allocating the percentage of expenses between the mother and father, determining that extraordinary healthcare provisions did not apply, excluding books and personal expenses in its award, and improperly basing the award on the lesser costs as between the University of Washington and the University of Montana.[14]
After hearing oral argument, the trial court agreed that the mother's net imputed income should be $1,335 per month, not $2,900, and added a requirement that the parties' daughter maintain a "C" average in school as a condition of continued support.[15] The trial court however refused to adjust the percentage allocation but provided no reason for doing so. The court's order states:
Respondent's motion for revision is denied, with the exception that the court finds the mother's income to be $1335/mo/net/imputed. This court does not adjust the percentages and affirms all other provisions of Commissioner Pro Tem Edward's order of child support. However, as a condition of continued support, child must maintain a "C" average in school.[16]
Bailey appeals.

DISCUSSION
Bailey contends that the court erred in determining the parties' incomes and the *1133 percentage allocation between the parents for college expenses.[17]
A trial court has broad discretion to order a divorced parent to pay postsecondary education expenses. See RCW 26.19.090(2). A court's decision concerning modification of child support is reviewed for an abuse of discretion. In re Marriage of Kelly, 85 Wash.App. 785, 792-93, 934 P.2d 1218 (1997). Discretion is abused if it is exercised on untenable grounds for untenable reasons. In re Marriage of Tang, 57 Wash.App. 648, 653, 789 P.2d 118 (1990).
As part of the Child Support Schedule Chapter of RCW 26.19, RCW 26.19.090 sets forth standards for an award of postsecondary support. The statute provides: "[t]he child support schedule shall be advisory and not mandatory for postsecondary educational support." RCW 26.19.090(1). In considering whether to award postsecondary educational support, the court must determine "whether the child is in fact dependent and is relying upon the parents for the reasonable necessities of life". RCW 26.19.090(2). If so, the court may award support based on consideration of a number of nonexclusive factors set forth in RCW 26.19.090(2) such as: the age of the child; the child's needs; the expectations of the parties for their children when the parents were together; the child's prospects, desires, aptitudes, abilities or disabilities; the nature of the postsecondary education sought; the parents' level of education, standard of living, current and future resources; and the amount and type of support that the child would have been afforded if the parents had stayed together.
There is no dispute that Bailey and Newell's daughter is dependent and that they agree to pay postsecondary educational support. The question presented is the use of the child support schedule and the intent of the legislature with regard to RCW 26.19.090(1). Bailey argues that even though the child support schedule is advisory, the trial court should accurately calculate the income for the parties and determine the correct presumptive proportional share of the education expenses before deciding how to allocate postsecondary education costs. Newell contends that the court may disregard the child support schedule entirely because it is not mandatory. While Newell admits that under the child support schedule, RCW 26.19.071(3)(e), the court must include overtime when calculating a parent's income, he argues that for purposes of awarding postsecondary educational expenses, the court has discretion to decide whether to include it.[18] Newell relied on the child support schedule for the income amount he successfully argued below should be imputed to Bailey. Newell's argument on appeal suggests that the court has discretion about whether and to what extent to consider the child support schedule.
In construing a statute our goal is to give effect to legislative intent, and when a statute is unambiguous, we derive its meaning from the plain language of the statute alone. State v. Glas, 147 Wash.2d 410, 415, 54 P.3d 147 (2002). The postsecondary educational award statute is within RCW chapter 26.19 entitled "Child Support Schedule". The intent of the chapter as expressed by the legislature is to insure that child support orders meet a child's basic need and to provide additional support "commensurate with *1134 the parents' income, resources, and standard of living." RCW 26.19.001. "The legislature also intends that the child support obligation should be equitably apportioned between the parents." RCW 26.19.001.
RCW 26.19.090(1) expressly states that the child support schedule should be "advisory" in a court's determination of postsecondary educational support. Advisory is defined as "containing or giving advice" or "having or excising power to advise". Webster's Third New International Dictionary at 32 (1993). Advice is defined as an "opinion" or "recommendation regarding a decision or course of conduct". Webster's at 32. While the postsecondary educational statute does not require the court to follow the child support schedule in allocating expenses between the parents, we believe the legislature intended that the standards of the child support schedule must be used to accurately determine the parents' income and the presumptive proportionate share of the combined income for each parent before the court determines, based on the other factors listed in RCW 26.19.090(2) what the percentage allocation should be. If the legislature had intended that the parties and the court could disregard the child support schedule or certain aspects of it, it would have expressly said so.
After the court accurately determines each parent's income and proportional share, the court has discretion to equitably apportion education expenses and may order "either or both parents" to pay for a child's postsecondary education support. RCW 26.19.090(6); RCW 26.19.001(1); In re Marriage of Kelly, 85 Wash.App. 785, 794, 934 P.2d 1218 (1997). Under the statute, it is within the trial court's discretion to decide whether, for how long, and how to apportion postsecondary educational expenses. But to do so without accurately calculating income and the proportional share of the income as required by the child support schedule, the court is not properly advised or informed under RCW 26.19.090(1).
We conclude that the pro tem commissioner and the trial court erred in not accurately determining each parties' income and proportional share under the child support schedule before making its decision about the amount each parent should be required to pay for postsecondary education support. The pro tem commissioner abused his discretion by excluding overtime in calculating Newell's income.[19] And while both the pro tem commissioner and the trial court used the presumptive proportional shares derived from the child support schedule for allocating postsecondary educational expenses, these percentages were based on incorrect calculations of the parties' income. When the trial court adjusted Bailey's income from $2,900 to $1,335, the percentage allocation should have been adjusted. Failure to do so was an abuse of discretion.
We reverse and remand so that the court can accurately determine the parties' income and proportional share, and then equitably apportion postsecondary education expenses for their daughter.
GROSSE and AGID, JJ., concur.
NOTES
[1] CP 5
[2] CP 17.
[3] CP 58.
[4] Newell proposed a total income of $2,801 for Bailey.
[5] CP 82.
[6] CP 169.
[7] She also offered an alternative calculation of Newell's monthly income based on his earnings in 2000 as reported on his tax return. According to this calculation, Newell's monthly gross income was $6546.43 and net income was $3,737.91 after the spousal maintenance payments. CP 172.
[8] CP 173.
[9] CP 174.
[10] CP 188.
[11] CP 188. This amount included the $750 monthly maintenance payments.
[12] CP 197.
[13] CP 197.
[14] CP 202.
[15] CP 203-204.
[16] CP 204.
[17] Bailey also assigns error to the amount of the court's award because it is based on the University of Washington tuition amount, but she presents no argument related to this issue and we therefore, decline to address it. See Fischer-McReynolds v. Quasim, 101 Wash.App. 801, 814, 6 P.3d 30 (2000). (This court does not consider on appeal issues or claims not supported by argument or relevant authority).
[18] We note that although overtime is presumptively included for purposes of awarding child support, a court may exclude overtime pay if it finds that it is a nonrecurring source of income. RCW 26.19.075(1)(b). This determination must be based on a review of the income received in the previous two calendar years. RCW 26.19.075(1)(b). Deviations from the standard calculation of child support are matters within the discretion of the trial court. In re Marriage of Wayt, 63 Wash.App. 510, 512-13, 820 P.2d 519 (1991). In exercising its discretion, the court must enter written findings and conclusions stating its reasons for deviation or denial of deviation. State ex rel. Stout v. Stout, 89 Wash. App. 118, 123, 948 P.2d 851 (1997).
[19] There is no indication that the trial court did so because it concluded that the overtime income was a source of income. RCW 26.19.075(1)(b).