

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | ) |
| | ) DIVISION ONE |
| SANDY S. OU, | ) |
| | ) No. 70790-6-I |
| Appellant, | ) |
| | ) |
| v. | ) UNPUBLISHED OPINION |
| | ) |
| HUNG K. CHEUNG, | ) |
| | ) |
| Respondent. | ) FILED: September 15, 2014 |
| | ) |

DWYER, J. — Sandy Ou appeals from the denial of her petition to modify a child support order. Ou sought to obtain for her son substantial educational postsecondary support from Hung Cheung—her former husband and the biological father of her son. Finding that the trial court, in denying Ou's petition, did not abuse the ample discretion conferred by RCW 26.19.090(2), or otherwise err, we affirm.

I

In 1994, Ou and Cheung were married. The following year, the couple had a son—Henry Cheung.[1] By 1998, however, Ou and Cheung had divorced. In 1999, Henry resided a majority of the time with Ou, and Cheung was ordered to make child support payments, which he did until Henry turned 18.

---

[1] We refer to Henry by his first name in order to differentiate between father and son. No disrespect is intended.

Before marrying Cheung, Ou obtained a postsecondary degree. She then worked as an interpreter for a number of years before becoming a self-employed real estate agent in Florida. In 2013, she estimated that her income for the year was $18,000.00 and listed her monthly net income as $1,671.

Cheung does not have a postsecondary degree. He worked as a cook in the bakery of a grocery store where his annual income is around $28,000. He also remarried. His current wife's dependent child and her two parents live with Cheung.

Henry excelled in school. During his final year of high school, he earned college credits at the local community college and was granted admission by the University of Florida, Virginia Technical Institute, Penn State University, and Embry-Riddle Aeronautical University. His first choice was to attend Embry-Riddle and study aerospace engineering. The annual cost of attending Embry-Riddle is over $46,000. However, through various scholarships and financial aid awards, Henry was capable of paying for about half of the annual cost.

Several months before Henry's 18th birthday,[2] Ou filed a petition to modify the child support order in order to obtain postsecondary support for Henry. After Cheung failed to respond, a default order was entered in which Cheung was ordered to pay postsecondary support for Henry. Nevertheless, on July 18, 2013, a hearing was held in King County Superior Court, which resulted in a

---

[2] Henry turned 18 on January 6, 2013.

denial of Ou's petition.[3] Additionally, a written order was entered on the same day memorializing the denial of Ou's petition.

Ou appeals.[4]

II

Ou contends that the trial court abused its discretion in denying her petition. This is so, she asserts, because the trial court failed to consider the statutory factors in RCW 26.19.090(2). We disagree.

"When considering a request for postsecondary educational support, RCW 26.19.090(2) directs the superior court to determine whether the child is in fact dependent and relying upon the parents for the reasonable necessities of life." In re Marriage of Morris, 176 Wn. App. 893, 904, 309 P.3d 767 (2013). Once the superior court has made this determination, it "may then exercise its discretion in determining whether and for how long to award support." Morris, 176 Wn. App. at 904. Factors it may consider include, but are not limited to, the following:

> Age of the child; the child's needs; the expectations of the parties
> for their children when the parents were together; the child's
> prospects, desires, aptitudes, abilities or disabilities; the nature of
> the postsecondary education sought; and the parents' level of
> education, standard of living, and current and future resources.
> Also to be considered are the amount and type of support that the
> child would have been afforded if the parents had stayed together.

RCW 26.19.090(2). However, because the trial court is not obligated to enter written findings of fact, "we review the record to determine whether the court

---

[3] Ou states that Cheung successfully moved to vacate the adverse default order. However, there is no evidence in the record supporting Ou's explication of the procedural history between the entry of the default order against Cheung and the denial of her petition.

[4] Respondent's brief was untimely filed. Appellant's motion to strike respondent's brief is granted.

engaged in the appropriate analysis," which includes a presumption "'that the court considered all evidence before it in' reaching its decision." Morris, 176 Wn. App. at 906 (quoting In re Marriage of Kelly, 85 Wn. App. 785, 793, 934 P.2d 1218 (1997)). Our review of the trial court's determination is for an abuse of discretion. Morris, 176 Wn. App. at 905.

Ou contends that the record does not show that the trial court properly considered all of the factors in RCW 26.19.090(2). However, the parties presented both evidence and argument with regard to all of the factors, and the trial court explicitly considered and made specific findings with regard to certain factors on the record. Several of these specific findings were memorialized in the trial court's written order. In the absence of evidence to the contrary, we presume that the trial court in this case considered all of the evidence that was before it in fashioning its order.

Moreover, the record reveals that the trial court considered the particular factors that Ou avers were not considered.[5] The trial court was aware of Henry's age[6] and his needs.[7] It was further aware of Henry's prospects, desires,

---

[5] Ou also argues that the trial court erred by calculating Cheung's income in disregard of the evidence. However, Ou failed to designate as part of the record any evidence of Cheung's income. Pro se litigants are held to the same standard as attorneys and must comply with all procedural rules on appeal. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). "The appellant has the burden of perfecting the record so that the court has before it all the evidence relevant to the issue." In re Marriage of Haugh, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990). Due to Ou's failure to include all the evidence relevant to resolving this issue, we decline to consider her argument.

[6] The Court: When does Henry turn 18? Has he already turned 18?
Ms. Ou: He already turned 18 in January 6th.

[7] I think the amount that was indicated was for the tuition or the costs of Embry-Riddle was about $46,000 a year. The total net income of both parents together is $35,000 a year, and even—even with the—what Ms. Ou indicated that the—

aptitudes, abilities, or disabilities,[8] as well as the nature of the postsecondary education that he sought.[9] Finally, the trial court was aware of the amount and type of support that Henry would have been afforded if his parents had stayed together.[10]

Nevertheless, Ou contends that it was incumbent upon the trial court to make specific findings as to the cost and availability of a postsecondary education at a publicly-funded institution before denying her petition. In support of her contention, she cites to In re Marriage of Shellenberger, 80 Wn. App. 71, 906 P.2d 968 (1995), in which we held that a trial court must "make specific findings as to the cost and availability of college education in the child's chosen field at publicly funded institutions before ordering an objecting parent to support a more expensive private college education." 80 Wn. App. at 85. We reasoned that an objecting parent of "modest means" should not be required "to pay for private college where the child can obtain a degree in his or her chosen field at a publicly subsidized institution." Shellenberger, 80 Wn. App. at 85. Given that the trial court did not order Cheung to pay postsecondary support, both the rule and the rationale set forth in Shellenberger are inapposite.

Our review of the record reveals that the trial court did not abuse its

---

that the amount after grants and scholarships is about $26,000 a year, that's still two-thirds of the parents' net income.

[8] "And—and we have to be realistic about what our means are, unfortunately, because this may be a very [good] school and a very good opportunity for a good student."

[9] "[T]he other [question] is whether or not [the parents] can afford to provide the Mercedes of education and pay for a university such as Embry-Riddle."

[10] "The total net income of both parents together is $35,000 a year, and even—even with the—what Ms. Ou indicated that the—that the amount after grants and scholarship is about $26,000 a year, that's still two-thirds of the parents' net income."

discretion pursuant to RCW 26.19.090(2) and did not otherwise err.[11]

Affirmed.

We concur:

_Trickey, J._

_Dwyer, J._

_Appelwick, J._

---

[11] Ou cites to our decision in <u>State ex rel. Stout v. Stout</u>, 89 Wn. App. 118, 948 P.2d 851 (1997), in support of her argument that a minimum need standard is imposed by RCW 26.19.065(2), unless a court deviates for reasons specified in RCW 26.19.075. Neither the statutory provisions cited by Ou nor our decision in <u>Stout</u> relate to the issue of whether the trial court complied with RCW 26.19.090(2). Thus, they provide Ou no basis for the relief that she requests.