# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of ) No. 75675-3-I
)
STUART J. SINSHEIMER, )
)
    Respondent/Cross-Appellant, )
) DIVISION ONE
    and )
)
ELIZABETH L. KRUGER, ) UNPUBLISHED OPINION
)
    Appellant/Cross-Respondent. ) FILED: January 16, 2018
_____ )

MANN, J. — Elizabeth Kruger and Stuart Sinsheimer divorced in 2005 and

entered into a property settlement agreement (PSA) that provided for

postsecondary support for their two children. Kruger sought to clarify and

enforce the PSA after Sinsheimer refused to make payments for their son's

college tuition and expenses. The trial court concluded that Sinsheimer was

required to pay the amount owed, but that future payments were conditioned on

their son providing Sinsheimer access to his online financial accounts. Both

parties appeal. Because the trial court did not abuse its discretion, we affirm.

## FACTS

Kruger and Sinsheimer divorced in 2005 and entered into a PSA. The PSA provided for postsecondary support for their two children Nathan and Jared:

> All post secondary college expenses, including tuition, are to be split equally between the husband and wife for both Nathan and Jared. It must be at a public state school but not necessarily in Washington state. In order to be entitled to the parental obligation, a child must make satisfactory progress toward a Baccalaureate degree and be in attendance on a full-time basis.
>
> The parental expenses in [sic] behalf of a child that will be equally shared shall cover a child's room and board, tuition, travel (4 round-trip tickets per school year), books and fees. The parents' contribution to a child's college expenses shall continue until a child's 23rd birthday, or the end of the academic year following their 23rd birthday, whichever is later.
>
> Nathan's and Jared's accounts, plus the NetVest proceeds allocated to the wife in Paragraph IV(b) above that remain after the payment of each child's private school expenses and the GET account proceeds are to be applied to the college expenses of each child prior to a parent being required to contribute thereto. Each parent's contribution after the exhaustion of all of each child's accounts (set aside funds) shall be equal.

An agreed order of child support was entered on May 24, 2010, and incorporated the PSA. Nathan and Jared's accounts and the NetVest proceeds were exhausted before Jared began college.[1]

When the oldest son, Nathan, received a significant academic scholarship for college, Kruger and Sinsheimer agreed to deduct the amount of the scholarship from the college tuition and expenses they were obligated to split equally. But when the second son, Jared, received a smaller athletic scholarship to attend The College of William and Mary, Kruger and Sinsheimer did not reach

---

[1] NetVest is an investment portfolio.

a similar agreement. Sinsheimer, however, unilaterally deducted the amount of Jared's scholarship from his share of the college expenses. In response, Kruger filed a motion to clarify the parties' postsecondary support obligations for Jared.

On July 28, 2015, a court commissioner issued an order of clarification, finding that the PSA did "not authorize a parent to deduct scholarships or grants from his or her share of post-secondary expenses." The commissioner ordered Sinsheimer to repay the amount he deducted. Sinsheimer filed a motion for revision. On October 2, 2015, the trial court issued its order on the motion for revision. The trial court upheld the majority of the commissioner's decision, only revising the commissioner's ruling to hold that the parties are not responsible for Jared's unpaid medical expenses, and clarifying the requirement for transportation costs.

With respect to Sinsheimer's access to financial records, the trial court indicated that it had considered both the language of the PSA and the relevant statutory requirements for access to educational records:

> the Property Settlement Agreement already includes prerequisites for parents to provide post-secondary support as follows: "In order to be entitled to the parental obligation, a child must make satisfactory progress toward a Baccalaureate degree and be in attendance on a full-time basis." The Court also considered RCW 26.19.090, which provides that "Each parent shall have full and equal access to the postsecondary education records as provided in RCW 26.09.225". RCW 26.09.225(3) defines educational records as follows: "Educational records of postsecondary educational institutions are limited to enrollment and academic records necessary to determine, establish, or continue support ordered pursuant to RCW 26.19.090."

As a result, the trial court ordered that "both parents shall have access to Jared's educational records as set forth in RCW 26.09.190 and as further defined in RCW 26.09.225 as a prerequisite to being entitled to the parental obligation."

On December 11, 2015, Jared e-mailed a copy of his 2016 spring semester bill from The William and Mary College to Kruger and Sinsheimer. After Sinsheimer failed to pay his share by the due date, Jared e-mailed a second copy of the bill to both of his parents. After Sinsheimer again failed to pay his share, Kruger filed a motion to clarify and enforce the PSA. Sinsheimer argued in response that his obligation to pay was conditioned on his having direct access to Jared's financial account.

On April 26, 2016, the court commissioner found that Sinsheimer was not entitled to direct access to the financial account and that each party was responsible for obtaining billing information from the school website or by requesting the information from Jared. The commissioner concluded also that the court did not have the authority to order Jared to grant Sinsheimer access to his online account. The commissioner ordered Sinsheimer to pay the amount owed and awarded partial attorney fees to Kruger.

Both parties moved for revision: Kruger seeking additional attorney fees, and Sinsheimer arguing that he needed direct access to Jared's financial account. On June 22, 2016, the trial court granted in part and reversed in part the commissioner's order. The trial court confirmed that each party was obligated to pay half of all postsecondary college expenses, including room, board, and tuition. After finding that Jared had provided sufficient documentation

to establish the amount owing for spring 2016 expenses and tuition, the trial court ordered Sinsheimer to pay his outstanding balance of $4637.25 within 15 days. While the trial court found that the bill provided by Jared was sufficient "for establishing post-secondary support for Spring 2016," the court also concluded that,

> Sinsheimer's request for additional account access also falls within the Court's October 2015 ruling and RCW 26.09.225(3). That is, other, additional records may also be 'necessary to determine, establish, or continue' post-secondary support. And as a matter of common sense, a parent who is obligated to pay a child's college tuition and expenses ought to have full, transparent information about the child's financial account at the college.

As a result, the court ordered:

> Going forward, as a condition of his parents' post-secondary support obligations, Jared Sinsheimer shall make available to each parent, and give each parent access to, Jared's financial account information at his college. Without limitation, this includes full online access to the financial account and all account statements (hard and electronic copies) showing all charges, credits, debits, and payments to the account.

The trial court then requested that The College of William and Mary make available to each parent full access, including online access, to Jared's financial account information. Finally, the court denied Kruger's request for attorney fees and retained jurisdiction "in this case and all further motions or petitions."

On July 26, 2016, the trial court granted Kruger's motion for reconsideration and awarded Kruger attorney fees, finding her to be the substantially prevailing party. Kruger appeals. Sinsheimer cross-appeals.

## ANALYSIS

### Access to College Financial Account

Kruger argues first that the trial court erred in issuing its July 2016 order because: (1) the earlier, October 2015 order was a "final judgment" that Sinsheimer did not appeal, (2) the court's decision granting Sinsheimer online access to Jared's financial account improperly modified the parties agreed obligations under the PSA, and (3) the trial court erred in concluding that access to Jared's online financial accounts was necessary to support Sinsheimer's obligation. We disagree.

We review a trial court's rulings addressing the provisions of a parenting plan for abuse of discretion. In re Marriage of Christel, 101 Wn. App. 13, 20-21, 1 P.3d 600 (2000). We defer to the sound discretion of the trial court and will intrude upon that discretion only if it is exercised in an untenable or manifestly unreasonable way. In re Marriage of Booth, 114 Wn.2d 772, 779, 791 P.2d 519 (1990). We do not review the trial court's determinations as to the credibility and persuasiveness of the evidence. In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996).

A.    Effect of the October 2015 Order

Kruger argues first that because Sinsheimer did not appeal the superior court's October 2015 order, he was precluded from relitigating the issue of whether he was allowed access to Jared's online financial account during Kruger's 2016 motion to enforce or clarify the PSA. Where an order disposes of the parties' claims and is not appealed "it directly precludes all further

-6-

proceedings in the same case, except clarification and enforcement proceedings, and it collaterally precludes other suits based on the same claim." Kemmer v. Keiski, 116 Wn. App. 924, 932, 68 P.3d 1138 (2003) (quotations omitted).

Contrary to Kruger's assertion, the October 2015 order did not address the specific question of whether Sinsheimer was entitled to access Jared's online financial accounts. While Sinsheimer requested online access during oral argument, the superior court ordered only that "both parents shall have access to Jared's educational records as set forth in RCW 26.09.190 and as further defined in RCW 26.09.225 as a prerequisite to being entitled to the parental obligation." The trial court did not explain whether this included direct access to Jared's online financial account.

The commissioner's April 2016 order on Kruger's motion to enforce or clarify was the first decision that directly addressed and rejected Sinsheimer's request for access to Jared's online financial account. This was the first final ruling on this issue and Sinsheimer filed a timely motion for revision with the superior court. Thus, Sinsheimer was not precluded from arguing at the superior court that he was entitled to access to Jared's online financial accounts.

B.    The June 2016 Order Clarified the PSA

Kruger next contends that the trial court's June 2016 order constituted an improper modification of the PSA. A modification occurs when the effect of the court's ruling causes a party's rights to be "either extended beyond or reduced from those originally intended in the decree," and requires a specific modification procedure to be followed. Christel, 101 Wn. App. at 22 (citing Rivard v. Rivard,

-7-

75 Wn.2d 415, 418, 451 P.2d 677 (1969)). In contrast, a clarification "is merely a definition of the rights which have already been given and those rights may be completely spelled out if necessary." Rivard, 75 Wn.2d at 418; Kemmer, 116 Wn. App. at 933. "A court may clarify a decree by defining the parties' respective rights and obligations, if the parties cannot agree on the meaning of a particular provision." Christel, 101 Wn. App. at 22.

Here, the PSA is silent on the issue of whether college support is contingent on Kruger and Sinsheimer receiving access to Jared's financial records. In response to Kruger's motion for clarification, and Sinsheimer's subsequent motion for revision, the trial court's October 2015 order clarified that Sinsheimer is entitled to access to records under RCW 26.19.090 and RCW 26.09.225. After Sinsheimer withheld payments claiming he needed access to financial records, Kruger again sought clarification. As a result, the trial court was asked to address the parties' disagreement on what constitutes "education records," and "necessary to determine, establish, or continue support" under RCW 26.09.225. The trial court's July 2016 order did not add new conditions, it instead clarified the intent of the PSA and the October 2015 order. The trial court's order was a clarification and not a modification.

C. Access to Online Financial Account

Kruger asserts next that the trial court erred in ruling that online user access to Jared's college financial account was a necessary condition for Sinsheimer's payment of his share of Jared's college expenses and tuition. As the trial court noted in the October 2015 order, RCW 26.19.090 and RCW

26.09.225 are applicable to child support for college expenses. RCW 26.19.090 states in pertinent part:

> (4) The child shall also make available all academic records and grades to both parents as a condition of receiving postsecondary educational support. Each parent shall have full and equal access to the postsecondary education records as provided in RCW 26.09.225.

RCW 26.09.225 states in pertinent part:

> (1) Each parent shall have full and equal access to the education and health care records of the child absent a court order to the contrary. Neither parent may veto the access requested by the other parent.
>
> . . . .
>
> (3) Educational records of postsecondary educational institutions are limited to enrollment and academic records necessary to determine, establish, or continue support ordered pursuant to RCW 26.19.090.

The question before the trial court was whether Jared's college financial accounts are "education records" that were "necessary" to determine, establish or continue support. The terms "academic records," and "necessary" are not defined in chapter 26.19 RCW or chapter 26.09 RCW. "In the absence of a specific statutory definition, words in a statute are given their common law or ordinary meaning." State v. Chester, 133 Wn.2d 15, 22, 940 P.2d 1374 (1997). "We may discern the plain meaning of nontechnical statutory terms from their dictionary definitions." State v. Kintz, 169 Wn.2d 537, 547, 238 P.3d 470 (2010).

The term "academic records" is broadly defined to include, "of, belong to, or associated with an academy or school." This definition is certainly broad enough to include school financial records. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 9 (2002). It is more instructive therefore to focus, as the trial court

did, on the term "necessary." The dictionary defines "necessary" as "that cannot be done without," "that must be done or had," "absolutely required," "essential," or "indispensable." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1510, 1511 (2002). Here, the trial court focused on the phrase "necessary" to determine, establish, or continue support, and held, "as a matter of common sense, a parent who is obligated to pay a child's college tuition and expenses ought to have full, transparent information about the child's financial account at the college."

Unfortunately, the record before the trial court supports that Sinsheimer does not trust either his son, Jared, or Kruger, to provide complete and accurate financial information. While it is unclear why the parties could not have worked out a better solution without repeatedly returning to the court, it is not our role to require they work it out between themselves. Kruger and Sinsheimer asked for assistance from the trial court, and it was within the trial court's sound discretion to determine the appropriate remedy to ensure continued postsecondary support without further judicial intervention. The trial court is in the best position to determine what remedy was "necessary" in this case, and the trial court's decision to allow online access was likely due to the substantial amount of conflict that preceded its final determination. Based on the facts in this case, we cannot say that the trial court's decision was manifestly unreasonable, or based on untenable grounds or untenable reasons. Christel, 101 Wn. App. at 21.

*Jurisdiction*

Kruger next argues, and Sinsheimer concedes, that the trial court did not have personal jurisdiction over Jared or The College of William and Mary, as they

-10-

are not parties to this case. Thus, the portions of the June 2016 order requiring Jared to provide access to his financial accounts and requesting the College of William and Mary to provide financial account access both parents, are unenforceable. City of Seattle v. Fontanilla, 128 Wn.2d 492, 909 P.2d 1294 (1996). When the trial court lacks personal jurisdiction, the order is void. Marley v. Dep't of Labor & Indus., 125 Wn.2d 533, 541, 886 P.2d 189 (1994). However, one portion of an order being rendered void does not affect the entirety of the order, and in this case, it is easy to differentiate between the void provisions and those that remain enforceable. See Shreeder v. Davis, 43 Wash. 129, 136, 86 P. 198 (1906).

Here, while the court cannot enforce the requirement that Jared provide access to his financial accounts, such as by holding him in contempt, the payment of support can be conditioned on Jared's action. The PSA itself includes a requirement that the "child must make satisfactory progress toward a Baccalaureate degree and be in attendance on a full-time basis," presuming that Jared will be providing this verification. Similarly, RCW 26.19.090(4) requires "the child" to make accessible to both parents his education records. A condition that neither parent contests. It is common for a court to include requirements and conditions that are within the control of the adult child. See In re Marriage of Kelly, 85 Wn. App. 785, 795, 934 P.2d 1218 (1997). Thus, under the trial court's order, Jared has a choice, he can provide access in which case his parents must pay their equal share of his postsecondary tuition and expenses, or he can elect to withhold access and perhaps lose his financial support.

*Retained Jurisdiction*

Kruger argues finally that the trial court erred by retaining jurisdiction and requiring that all "further motions or petitions shall be brought before him." We disagree. As this court has previously held, "a trial court may retain jurisdiction over [a] matter for a limited period of time in order to review the efficacy of its decision and to maintain judicial economy following its order." In re Marriage of True, 104 Wn. App. 291, 298, 16 P.3d 646 (2000). Retained jurisdiction may be particularly necessary where, "the finality of the plan by its own terms is open to review and review is likely to be sought and likely to occur." True, 104 Wn. App. at 298; see also In re Marriage of Adler, 131 Wn. App. 717, 726, 129 P.3d 293 (2006).

The facts in True are substantially similar to the facts in this case. In True, the parties had been through a contentious parenting plan hearing, had been back and forth from mediation, and had both filed cross motions for modification. True, 104 Wn. App. at 298. The trial court determined, after modifying the order, that there remained a high likelihood that further review would be sought. Here, the parties' disputes over providing postsecondary support for Jared have been contentious for over two years. Based on this history, the court expected further review will be necessary. Retaining jurisdiction regarding this order was reasonably necessary to review whether the order effectively clarifies the requirements of the parties and to maintain judicial economy.

In True, as in this case, one of the parties argued that the retention of jurisdiction would conflict with the statutory right to disqualify the judge in a

modification proceeding, citing to <u>State ex rel. Mauerman v. Superior Court for Thurston County</u>, 44 Wn.2d 828, 271 P.2d 435 (1954).[2] <u>True</u>, 104 Wn. App. at 298. This court disagreed, holding,

> a later possible attempt to seek review of the terms of the agreed to, and modified, parenting plan is not the same as seeking modification on new facts or changed conditions since entry of the original decree. Here the trial court maintained jurisdiction for a limited period of time regarding the modified parenting plan and custody provisions entered. The trial court has not prevented Penelope from filing a new modification action if the situation and facts so merit.

<u>True</u>, 104 Wn. App. at 298. Similarly, we hold this retention of jurisdiction is limited to "review of the terms" of the parenting plan and this order, and does not act to hinder Kruger from seeking to disqualify a judge in a new modification action as guaranteed by <u>Mauerman</u>. <u>See Mauerman</u>, 44 Wn.2d at 830.

Kruger also argues the trial court abused its discretion in retaining jurisdiction because the order was not provisionary or temporary, and the order did not include a specific time limitation. Again, we disagree. "The characterization of a plan as temporary or permanent with review built in is irrelevant, given the trial court's authority to fashion an appropriate remedy." <u>In re Marriage of Adler</u>, 131 Wn. App. 717, 726, 129 P.3d 293 (2006) (citing <u>In re Marriage of Possinger</u>, 105 Wn. App. 326, 337, 19 P.3d 1109 (2001)). Although most of the previous cases where the judge retained jurisdiction included a

---

[2] <u>Mauerman</u> held, "a proceeding to modify the child custody provisions of a divorce decree, upon allegations of changed conditions since the entry of that decree, is a new proceeding. It presents new issues arising out of new facts occurring since the entry of the decree. It is not ancillary to or in aid of the enforcement of the divorce decree. It is a 'proceeding' within the meaning of the cited statutes, and the petitioner is entitled to a change of judges as a matter of right." <u>Mauerman</u>, 44 Wn.2d at 830.

specific period of time when the jurisdiction would end, in this case, the time limit is implied. There is only a little more than a year remaining of postsecondary support under the parenting plan. This is not an unreasonable amount of time to retain jurisdiction.

*June 2016 Order to Pay Outstanding Balance*

Sinsheimer argues on cross appeal that the trial court's June 2016 order erroneously ordered that he pay the outstanding balance of $4,537.25 for the spring 2016 tuition and expenses because he did not yet have access to the online financial accounts. We disagree.

The trial court's June 2016 order specifically found that "Jared provided a bill sufficient—at a basic level—for establishing postsecondary support for Spring 2016." Because substantial evidence was submitted to the trial court to demonstrate the amount owed, and Sinsheimer had been previously ordered to make these payments, the trial court did not abuse its discretion in requiring Sinsheimer to make the overdue payment. While the trial court agreed with Sinsheimer that additional financial account access may be necessary, the court's order was specifically limited to future payment obligation: "[g]oing forward, as a condition of his parents' postsecondary support obligations, Jared shall make available to each parent, and give each parent access to, Jared's financial account information at his college." The trial court did not err in requiring Sinsheimer to pay for the spring 2016 tuition and expenses.

*Attorney Fees*

Sinsheimer also argues that the trial court abused its discretion in awarding attorney fees as a result of the June 2016 order and that he is owed fees on appeal. We disagree. The decision to award fees is within the trial court's discretion. Christel, 101 Wn. App. at 24.

Under RCW 26.18.160, "[i]n any action to enforce a support or maintenance order under this chapter, the prevailing party is entitled to a recovery of costs, including an award for reasonable attorney fees. An obligor may not be considered a prevailing party under this section unless the obligee has acted in bad faith in connection with the proceeding in question." Generally, "a prevailing party is one who receives an affirmative judgment in its favor." Cornish College of the Arts v. 1000 Virginia Ltd. P'ship, 158 Wn. App. 203, 231, 242 P.3d 1 (2010). In its June 2016 order, the trial court enforced the PSA by ordering Sinsheimer to pay Kruger the amount he had withheld. While the court agreed with Sinsheimer that he must be granted access to Jared's financial account in the future, this was not a "major issue" as it was not relevant to the present enforcement action. The trial court did not abuse its discretion in awarding Kruger fees under RCW 26.18.160.

Sinsheimer next claims Kruger brought this appeal in bad faith, maintaining Kruger's only motive is to "avoid transparency and keep control over Sinsheimer's right to information." This claim is unfounded. Kruger's appeal raised legitimate legal questions. However, as both parties prevail on major

issues on appeal, neither is a "prevailing party" entitled to attorney fees. <u>In re</u> <u>Marriage of Nelson</u>, 62 Wn. App. 515, 519, 814 P.2d 1208 (1991).

We hold that the portions of the trial court's June 2016 order requiring Jared to provide access to his financial accounts and requesting The College of William and Mary to provide financial account access to Sinsheimer and Kruger are void. Otherwise, we affirm.

WE CONCUR: