FILED
COURT OF APPEALS
DIVISION II

2014 JAN 22 AM 9: 17

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In re the Marriage of:

VERNON RUSSELL BLANK II,

                Respondent,

v.

AMANDA L. BLANK,

                Appellant

No. 42959-4-II

UNPUBLISHED OPINION

PENOYAR, J. — Amanda Blank and Russell Blank both appeal the trial court's modification of the child support order and the order on postsecondary educational support relating to their dissolution. Amanda[1] contends the trial court rested its decisions on unreasonable or untenable grounds when it: (1) failed to include all Russell's income when calculating his child support obligation, (2) determined their younger son Ryan was not enrolled in high school during certain periods, (3) did not make Russell pay his full share of their elder son Adam's postsecondary educational expenses at the University of Idaho, (4) ordered that Ryan's postsecondary costs be shared by Ryan, Amanda, and Russell in equal one third shares, (5) failed to include Adam's Sylvan Learning Center expense in Russell's postsecondary educational support obligation, and (6) failed to award her reasonable attorney fees. On cross appeal Russell argues the trial court rested its decisions on unreasonable or untenable grounds when it: (1) calculated Russell's net monthly income to include some income from his spouse, (2) ordered that Russell pay child support for Ryan beyond June 2010, Ryan's anticipated date of graduation from high school, (3) required Russell to contribute to Ryan's and Adam's postsecondary education, and (4) failed to award him reasonable attorney fees.

---

[1] We use the parties' first names for clarity and intend no disrespect.

First, we hold that the trial court erred when it calculated Russell's income and remand for the trial court to include all personal expenses paid by Russell's business in his income. Second, we hold the trial court erred by finding Ryan not enrolled in high school for the months of February, March, July, and August 2010 and remand for the trial court to revise Russell's child support obligation. Third, because the trial court must base the postsecondary educational support obligation on the relative income of the parties, we remand for the trial court to apportion the two thirds share of Ryan's postsecondary expenses allocated to Russell and Amanda based on their respective incomes. Fourth, we hold the trial court erred when it failed to find Russell intransigent and failed to award Amanda reasonable attorney fees and remand for an entry of reasonable attorney fees for Amanda. Finally, we award Amanda reasonable attorney fees on appeal. Regarding the remaining issues, we hold the trial court reasonably exercised its discretion when it ordered child support and postsecondary support.

FACTS

I.     INITIAL PROCEEDINGS

Russell and Amanda divorced on December 29, 1993. *In re Marriage of Blank*, No. 39483-9, 2010 WL 4308204, at *1 (Wn. App. 2010). They have two children, Adam, who was born on April 17, 1989, and Ryan, who was born on November 11, 1991. *Blank*, 2010 WL 4308204, at *1. Russell owns his own photography business, Perler Photography, Inc., which his wife, Leann Blank, helps him manage. On July 31, 2008, Russell filed a petition for modification of child support, requesting that the court (1) enter a new order for child support payments, (2) order repayment or credit for overpaid child support, and (3) award alternating years for tax exemptions between Russell and Amanda. *Blank*, 2010 WL 4308204, at *1. On

2

December 29, 2008, Russell filed a motion for an order setting child support for Ryan, a minor child at the time. *Blank*, 2010 WL 4308204, at *1.

The superior court commissioner issued a letter ruling concluding that Amanda's income was $4,738 and Russell's was $7,600, making Russell's support obligation for Ryan $750 per month. *Blank*, 2010 WL 4308204, at *1. The superior court commissioner denied both parties' requests for attorney fees. *Blank*, 2010 WL 4308204, at *1.

After the trial court denied Amanda's and Russell's motions for revision, Amanda appealed to this court, arguing that the trial court failed to conduct a de novo review of the record before the commissioner which resulted in an improper calculation of Russell's income. *Blank*, 2010 WL 4308204, at *1. Amanda further argued that the trial court erred when it did not award her reasonable attorney fees. *Blank*, 2010 WL 4308204, at *1. We held that:

> [T]he record of the trial court proceedings does not contain the trial court's explanation of its basis for denying Amanda's motion to revise the final order for child support and fails to demonstrate how it calculated [Russell's] child support obligation. Because the record does not adequately support the trial court's ruling as to [Russell's] income, its rulings regarding tax exemptions and attorney fees are not supported by substantial evidence. . . . Accordingly, we vacate the trial court's final order for child support and remand for further proceedings.

*Blank*, 2010 WL 4308204, at *1.

## II. PROCEEDINGS ON REMAND

On remand, the trial court undertook a complete review of all documents, pleadings, transcripts, letter rulings, and sealed financial records. The trial court also heard reargument regarding the original motions for revision filed by each party as to the child support order. The trial court reviewed the record before the trial court commissioner de novo and issued a letter ruling on March 22, 2011.

In the letter ruling, the trial court found that Russell's monthly income was $7,708.12 and provided detailed findings supporting that number. The trial court started with Russell's 2008 W-2 income with a credit given for $2,000.00 for his voluntary pension payments. The trial court then allocated 25 percent of Leann's net monthly income to Russell because Russell "has discretion to set salary for himself and his spouse [and] Leann Blank's salary is higher than [Russell's], even though he owns the company." Clerk's Papers (CP) at 1273. The trial court also found that 50 percent of Perler's 2008 business expenses, plus a $1,835.16 shareholder loan, should be considered personal expenses of the marital community, less "the $250 per bi-weekly paycheck reimbursed by Leann Blank to the corporation for personal expenses incurred for the benefit of the marital community," totaling $38,204.55. CP at 1274. The trial court then designated 50 percent of the $38,204.55 to Russell, for a total of $19,102.28 for the year and $1,591.86 per month. The trial court also found that 20 percent of Perler's monthly vehicle expense should be attributed as Russell's personal expense, in the amount of $165.24 per month. Applying these calculations to the child support worksheet, the trial court found that Russell's net monthly income was $7,708.12.

Based on his net monthly income and the child support guidelines in effect as of May 2009, Russell's child support obligation for Ryan was $755.16 per month, with an effective date of August 1, 2008. The percentages set in the child support worksheet were 62 percent for Russell and 38 percent for Amanda. The trial court found that the parties were required to pay for Ryan's uninsured medical expenses or other extraordinary expenses at the stated percentages.

The trial court did not revise the commissioner's ruling denying attorney fees. Looking solely at Russell's conduct in the current petition and related motions, the trial court found that Russell did not engage in fraud or intransigence, in part, because he had "disclosed over 2000

4

pages of financial documents in response to discovery requests." CP at 1276. The trial court also found that each party should bear their own fees under RCW 26.09.140 because Russell did not have the ability to pay the fees requested, nor did Amanda have the need.[2] The trial court reserved making a decision on medical insurance, postsecondary educational support, and for over-payment and/or back support until further presentation.

III.    MOTIONS FOR RECONSIDERATION

Amanda moved for reconsideration of the trial court's letter ruling, arguing that the trial court (1) overlooked certain items when calculating Russell's 2008 income, (2) erred by not finding that Amanda is entitled to attorney fees, and (3) erred by finding that Russell did not engage in fraud or intransigence. The trial court held a hearing on Amanda's motion for reconsideration and to enter an order on child support. The trial court granted Amanda's motion for reconsideration in part and modified Russell's income slightly to correct a mistake in its letter ruling that stated Leann made biweekly payments of $250 to Perler, when she actually made semimonthly payments of $250 to Perler. This modification, however, did not change the monthly child support payment. The trial court denied the remainder of Amanda's motion.

Russell moved for reconsideration of (1) the court's determination that income generated by Leann be imputed to Russell in calculating his net monthly income, and (2) the orders that

---

[2] The trial court also found that

> [T]he Petition was prompted by and necessitated by the older child reaching the age of majority and changes in the law affecting extrapolation. This court finds that the Petition was brought in good faith[.] Finally, this court is also mindful that Amanda Blank has made no showing that she actually paid any attorney's fees to Mr. Berry and therefore, has not made the requisite showing of need.

CP at 1276.

require Russell to continue paying any form of child support for Ryan because he is beyond age 18 or beyond what would have been his normal graduation date. Amanda also moved for a determination of postsecondary support for Adam and Ryan.

At a hearing on the motions, the trial court determined it was appropriate and fair to attribute some of Leann's income to Russell. The trial court, however, revised the calculation used to determine how much of Leann's income to attribute to Russell and also modified the shareholder loan figure considered as income, which resulted in a new child support payment amount of $772.21.[3]

IV.   RULINGS ON CHILD SUPPORT AND POSTSECONDARY SUPPORT

On June 15, 2011, the trial court orally ruled Russell was not required to pay child support for Ryan for the months of February, March, July, and August 2010 because it found Ryan was not enrolled in high school for those months. Ryan signed up for Running Start classes at Pierce College in January 2010, but the trial court found he was not enrolled because he received no credits for the classes and was not otherwise in high school.[4] The trial court found that Ryan was not enrolled in July and August 2010 because he was 18, he had not graduated from high school, and he was not earning any credits. With the exception of the months of February, March, July, and August 2010, the trial court also found that Russell must

---

[3] To determine of the amount of Leann's income that should be imputed to Russell, the trial court took both Russell's and Leann's gross salaries and averaged them to come up with a difference of $569.75 a month. The trial court did not deduct the $250.00 semimonthly payments with the new calculation. The trial court still attributed 25 percent of the business expenses as Russell's personal expenses and factored in a $12,000.00 shareholder loan.

[4] Ryan turned 18 on November 11, 2009, which was the fall term of his senior year. He would have graduated in June of 2010 if he had graduated on track. The trial court noted that Ryan struggled academically but that there was no question Amanda was entitled to child support for Ryan through his 18th birthday. So the trial court looked at what Ryan was doing at the end of fall term 2009, going into 2010.

reimburse Amanda for Ryan's medical expenses, except for chiropractic expenses, based on the percentage rate specified on the child support worksheet.

Regarding Ryan's high school education expenses, the trial court determined Russell did not have to reimburse any of the Pierce College Running Start fees because Ryan did not pass any class or receive any credit at Pierce College. The trial court determined that Russell must reimburse Amanda for bookstore and other charges for Ryan's Running Start classes at Clover Park at the percentage rate specified on the child support worksheet. The trial court required Ryan to share in the cost of the tools Amanda purchased for his Clover Park classes at a one-third share, with the remaining two-thirds being shared between Russell and Amanda at the percentage rate. Regarding Ryan's postsecondary support, the trial court held that Ryan should contribute to the cost of his postsecondary education and allocated one-third of the expense of his AA degree to Ryan, one-third to Russell, and one-third to Amanda based on the standards set in RCW 26.19.090. The trial court further noted that Russell's postsecondary support obligation was contingent on Ryan maintaining good academic standing according to the institution.

The trial court then addressed medical expenses and postsecondary support for Adam. The trial court ruled the amount Russell already paid toward Adam's semester at the University of Idaho in the fall of 2008, for which he received no credits, was adequate. The trial court also did not order support for the 2009 winter and spring quarters at Pierce College because Adam was not in good academic standing because his cumulative grade point average was less than a 2.0. Adam had improved by fall of 2009 and, although ordered retrospectively, the trial court ordered postsecondary support beginning in the fall of 2009 with Adam, Russell, and Amanda each contributing one-third. Absent extraordinary circumstances, the trial court held this support was to end in the spring of 2012, when Adam would turn 23. The trial court also ordered Russell

to pay one-third of the past unreimbursed medical expenses, except chiropractic and massage expenses, for the months Russell must pay postsecondary support. Going forward, however, Russell had no obligation to pay unreimbursed medical expenses unless it was an extraordinary expense.

V.    FURTHER MOTIONS FOR RECONSIDERATION

Amanda moved for reconsideration of the trial court's June 15, 2011 oral ruling arguing that (1) Ryan had been continuously enrolled in high school since he was 18, (2) the trial court erred in excluding chiropractic and massage treatment as a reimbursable expense, (3) the trial court erred when it looked at postsecondary support from the vantage point of the June 2011 evidentiary hearing, rather than from August 1, 2008, and (4) the trial court erred when it ruled that postsecondary education and healthcare expenses would not be based on each party's share of their combined monthly incomes.

The trial court held a hearing on August 5, 2011 regarding Amanda's motion for reconsideration and entered an amended final order of child support on September 8, 2011. The trial court did not reconsider the four months (February, March, July, and August 2010) it did not allow child support for Ryan because "enrollment is something more than just simply signing up." CP at 2120. The trial court, however, allowed unreimbursed medical expenses for those months, including chiropractic expenses. Going forward, the trial court believed it was appropriate to allocate some postsecondary support to Ryan and thus did not reconsider its decision to allocate one-third to Ryan, one-third to Russell, and one-third to Amanda.

The trial court did not reconsider its decision that Russell was not obligated to make any further payment for Adam's semester at the University of Idaho or his first two quarters at Pierce College. However, because the order on Adam's postsecondary support was retroactive, the trial

court did reconsider its decision and ordered that only Russell and Amanda share in Adam's postsecondary expenses based on the proportionate rate. Going forward, until Adam turned 23, the trial court ordered that the share remain proportionate between Russell and Amanda. The trial court also allowed Russell to get a credit for any class that he paid for that Adam withdrew from or had to retake.

Russell moved for reconsideration of the September 9, 2011 order arguing that the June 15, 2011 order required him to pay approximately $9,000 to Amanda and the amended order required him to pay an additional $20,000, which he did not have. Russell also argued that Amanda included a $4,300 Sylvan Learning Center expense in the judgment, which the trial court did not approve. The trial court denied Russell's motion for reconsideration except that it held Russell was not responsible for the Sylvan Learning Center expense. Amanda timely appealed and Russell timely cross appealed.

ANALYSIS

I.     STANDARD OF REVIEW

We review a trial court's modification of child support to determine if the trial court's decision rests on unreasonable or untenable grounds. *In re Marriage of McCausland*, 159 Wn.2d 607, 615-16, 152 P.3d 1013 (2007) (quoting *In re Marriage of Leslie*, 90 Wn. App. 796, 802-03, 954 P.2d 330 (1998)). We also review the trial court's modification to determine if it is based on an erroneous view of the law. *In re Marriage of Choate*, 143 Wn. App. 235, 240, 177 P.3d 175 (2008) (quoting *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993)). Further, the trial court's findings of fact must be supported by substantial evidence. *In re Marriage of Schumacher*, 100 Wn. App. 208, 211, 997 P.2d 399 (2000). Substantial evidence is that which is sufficient to persuade a fair-minded person of the

truth of the declared promise. *In re Marriage of Hall*, 103 Wn.2d 236, 246, 692 P.2d 175 (1984). We may not disturb findings of fact supported by substantial evidence even if there is conflicting evidence. *In re Marriage of Lutz*, 74 Wn. App. 356, 370, 873 P.2d 566 (1994) (quoting *Henery v. Robinson*, 67 Wn. App. 277, 289, 834 P.2d 1091 (1992)).

II.    RUSSELL'S 2008 INCOME

Amanda argues the trial court erred when it failed to include all Russell's income when calculating his share of the child support obligation. Specifically, she argues the trial court erred (1) by treating only 25 percent of Perler's business expenses as Russell's income, (2) when calculating the amount of shareholder loans from Perler that should be included in Russell's income, and (3) by disregarding Russell's unreported cash. Russell does not directly respond to these arguments and instead contends the trial court erred by imputing Leann's income to him and by attributing Perler's business expenses as his personal expenses in violation of RCW 26.19.071.

A.    Russell's Personal Expenses

Russell admitted that Perler paid certain personal expenses for him and Leann. Amanda argues that because Perler is Russell's separate property, the trial court erred when it determined that only half of Russell's and Leann's personal expenses that Perler paid should be attributed to Russell as his income. Thus, Amanda argues 100 percent of what the trial court stated were personal expenses should be considered Russell's income. Russell does not directly refute Amanda's argument and instead responds only that the trial court erred by failing to state which expenses it deemed personal expenses. Because Perler is Russell's separate property, 100 percent of the personal expenses paid by this business should be treated as his income.

When determining a parent's child support obligation, the trial court must consider all income and resources of each parent's household. RCW 26.19.071(1). The trial court should consider only the income of the parents of the children whose support obligation is at issue and should not include the income of a new spouse in its calculation of gross income. RCW 26.19.071(1), (4). A parent's separate property and the profits from that property remain that parent's separate property so long as it can be traced and identified. RCW 26.16.010; *In re Marriage of Chumbley*, 150 Wn.2d 1, 6, 74 P.3d 129 (2003). If the parent is a business owner and has a business "expense account[] which do[es] more than actually reimburse for true business expenses" then the parent business owner has an increased ability "to pay maintenance because the owner is spared from paying the[] expenses on a personal basis [and] . . . [t]here are a number of such items buried in business financial statements that create factual and discretionary issues." 20 KENNETH W. WEBER, WASHINGTON PRACTICE: FAMILY & COMMUNITY PROPERTY LAW § 34.10, at 370 (1997).

Here, the trial court reviewed Amanda's declaration that identified which of Perler's expenses she determined or speculated were actually personal expenses, Leann's response declaration agreeing that some expenses were personal but disputing others, and all the submitted financial documents. From the declarations and documents, the trial court found it "appropriate to designate 50 [percent] of the 2008 identified expenses as personal, after first subtracting the $250 per bi-weekly paycheck reimbursed by Leann Blank to the corporation for personal expenses incurred for the benefit of the marital community."[5] CP at 1274. After including an annualized shareholder loan, the court found the amount of personal expenses charged to the

---

[5] The trial court later corrected it calculation to reflect $250.00 semi-monthly payments instead of $250.00 bi-weekly payments.

business for 2008 was $38,204.55 and that $19,102.28 represented Russell's one half "community share of these expenses, for a value of $1,591.86 per month business income imputable to Russell." CP at 1274.

But the character of property as separate or community is established at the point of acquisition. RCW 26.16.010; *In re Marriage of White*, 105 Wn. App. 545, 550, 20 P.3d 481 (2001). Russell owned Perler as his separate property before his marriage to Leann and thus Perler and any income it generates remains Russell's separate property. The trial court committed an error of law by attributing 50 percent of the personal expenses to Leann. Thus we remand for the trial court to attribute 100 percent of the personal expenses to Russell's income. Additionally, although the trial court did not specifically identify each and every expense it found to be a personal expense, it completed a thorough review of the available documents and determined it was appropriate to designate 50 percent of the business expenses as personal. Because the trial court properly exercised its discretion, we do not disturb that decision.

B.    Leann's Income Treated as Russell's

Russell argues the trial court erred by imputing some of Leann's income to him in violation of RCW 26.19.071. Russell incorrectly argues the trial court imputed 25 percent of Leann's income to him. The trial court initially allocated 25 percent of Leann's income to Russell, but after Russell moved for reconsideration, the trial court modified its calculation and instead averaged Russell's and Leann's gross salaries to come up with a difference of $569.75 a month which it allocated to Russell.

Here, the trial court noted that Leann had no obligation to support Ryan, but also found that Russell had "discretion to set [the] salary for himself and [Leann]" and Leann's salary was higher than his, "even though he own[ed] the company . . . . [T]herefore, [it was] appropriate to

12

consider Leann's salary in determining the amount of [Russell's] income." CP at 1273. The trial court then allocated $569.75 of Leann's salary a month to Russell. The trial court found that Leann should earn a salary because she performed services for Perler on a full-time basis, but that it was appropriate to consider her income in calculating Russell's child support obligation because Russell set her salary higher than his, even though he owned the company. Allocating $569.75 to Russell's income made his and Leann's respective salaries equal, which the trial court found to be a fair method of calculation.

The trial court did not improperly impute Leann's income to Russell, but merely allocated what was realistically Russell's income as the owner of Perler. Because the trial court properly exercised it discretion and its decision is not manifestly unreasonable, we hold the trial court did not err when allocating a portion of Leann's income to Russell.

C.    Shareholder Loan Calculation

Amanda next argues the trial court erred by calculating the amount of the shareholder loans from Perler that should have been included in Russell's net monthly income. Amanda states that between July 14, 2008 and December 14, 2008, the balance of shareholder loans Russell took increased $12,025.90 and that the court divided this amount over 12 months when it should have divided it over 5 months. Thus, Amanda maintains the sum of $2,405.18, rather than $1,051.00, per month should have been included in Russell's net monthly income.

Other than to state that the trial court must consider all income and that the trial court made a "clerical error," Amanda provides no legal support for her contention that the shareholder loan should be calculated over 5 months versus 12. Because Amanda failed to provide meaningful argument or legal support for this argument, we need not consider it. RAP 10.3(a)(6).

13

D.     Unreported Cash

Finally, Amanda argues the trial court erred by disregarding Russell's unreported cash. Again, other than to state the trial court must consider all income, Amanda provides no legal support for her argument that the trial court should have included this alleged unreported cash in Russell's income. The trial court undertook a careful and complete review of all documents, pleadings, transcripts, letter rulings, and sealed financial records; heard re-argument from the parties; and reviewed the record before the trial court commissioner. The trial court also heard argument and reviewed declarations regarding Russell's alleged unreported cash. Because the trial court had discretion to weigh the conflicting evidence presented and its decision does not rest on unreasonable grounds, we hold the trial court did not err by not including the alleged unreported cash in Russell's income.

III.    RYAN'S ENROLLMENT IN HIGH SCHOOL

The relevant provision in the child support order states "[s]upport shall be paid: until Ryan reaches the age of 18 or as long as he remains enrolled in high school, whichever occurs last." CP at 2027. The parties dispute the application of this simple provision in two specific time periods. Russell also maintains that Ryan refused to take affirmative steps to complete his high school education on time, and thus at age 18, Ryan was no longer dependent and became emancipated.

A.     February and March 2010

The trial court found that although Ryan had signed up for Running Start classes in January 2010, he was not enrolled in high school in February and March 2010 because he received no credits for his Running Start classes and was not otherwise in high school. Specifically, the trial court stated "I believe that enrollment is something more than just simply

14

signing up." CP at 2120. But a Bethel public schools student records employee authored a letter on July 1, 2011 verifying that Ryan had been continuously enrolled in high school since January 27, 2009. Although Ryan received no credit for one class and failed the other in the months of February and March 2010, he was enrolled in high school classes and his status as a high school student remained the same for those months.[6] Thus, the trial court's decision to suspend Russell's child support payments for those months because Ryan received no credits for his high school classes was based on unreasonable grounds.

### B. July and August 2010

The trial court also found that Ryan was not enrolled in July and August 2010 because he was 18, had not yet graduated from high school, was not earning any credits, and was not making any significant progress towards his high school degree. If Ryan had graduated on track, he would have graduated in June 2010. After the 2010 summer break, however, Ryan continued his high school classes and the student records employee stated that Ryan was continuously enrolled in high school since January 27, 2009. Further, the child support order requires that Russell make payments every month and does not allow for abatement during the summer months. *See In re Marriage of Jarvis*, 58 Wn. App. 342, 347, 792 P.2d 1259 (1990) (holding that the trial court erred when it modified the child support decree to eliminate child support payments during the summer months).

Because the record indicates that Ryan remained continuously enrolled in high school beginning in January 2009 through December 2011, the trial court's decision to suspend child support payments in July and August 2010 because Ryan was not earning any credits during the

---

[6] Additionally, a successful, eventual outcome is not required for a student to be "enrolled" under the ordinary meaning of the term.

15

summer break from school is based on unreasonable grounds. Accordingly, we reverse and remand for the trial court to modify the child support order to reflect that Ryan was enrolled in high school during February, March, July, and August 2010.

C.    Child Support Payments after Ryan's expected date of graduation

Russell maintains that when Ryan turned 18 in November 2009, he was no longer dependent and became emancipated, and thus the trial court erred when it ordered him to continue child support payments for Ryan beyond Ryan's anticipated date of graduation in June 2010. Amanda responds that Russell was obligated to continue his child support payments because Ryan was still a dependant and Russell's obligation was conditioned on whether Ryan was still enrolled in high school.[7] We affirm because the parties agreed in writing to extend their child support obligations beyond Ryan's 18th birthday, as long as he remained in high school.

RCW 26.09.170(3) provides that: "Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child or by the death of the parent obligated to support the child." *See also In re Marriage of Gimlett*, 95 Wn.2d 699, 703-05, 629 P.2d 450 (1981). For the purposes of this statute, emancipation refers to the child reaching the age of majority—18. *Gimlett*, 95 Wn.2d at 702.

The child support order here specifically provides for child support payments after emancipation—it requires Russell to continue payments until Ryan reaches 18 or graduates from high school, whichever is later. The child support order does not require that Ryan graduate in

---

[7] To support her argument, Amanda relies on *Kruger v. Kruger*, 37 Wn. App. 329, 332, 679 P.2d 961 (1984). Amanda's citation to this case is misplaced because *Kruger* held the trial court did not err by calculating child support arrearage to include the time between the children's 18th and 21st birthdays in which they were enrolled in full-time programs of *higher education*, whereas here the parties are arguing about Russell's obligation of child support while Ryan is still in *high school* between his 18th and 21st birthday.

16

four years or on time to continue receiving child support payments. Nor does the order base Russell's child support obligation on a determination of Ryan's dependency. Instead, the order requires that Russell continue making child support payments "as long as [Ryan] remains enrolled in high school."[8] CP at 2027. Thus, during the time Ryan remained enrolled in high school, Russell was required to continuing making child support payments for Ryan. The trial court properly exercised its discretion when it ordered Russell to continue making child support payments for Ryan through December 2011.

D. Unreimbursed Extraordinary Health Care Expenses

Russell also argues the trial court erred when it ordered him to contribute to Ryan's unreimbursed extraordinary health care expenses after November 2009 (when Ryan turned 18) or June 2010 (when Ryan was supposed to graduate from high school) because (1) Ryan was no longer a dependent, (2) the trial court never determined the reasonableness or necessity of the costs, and (3) the trial court never addressed Russell's ability to contribute to the health care expenses.[9] We hold the trial court properly exercised its discretion when ordering Russell to pay a portion of Ryan's unreimbursed extraordinary health care expenses after June 2010 because RCW 26.19.080 requires that parents share paying their child's health care expenses and a determination of the reasonableness or necessity of the expenses is discretionary.

RCW 26.19.080(2) provides that "[m]onthly health care costs shall be shared by the parents in the same proportion as the basic child support obligation." RCW 26.19.080(4)

---

[8] The parties' discussion of dependency, therefore, is irrelevant to a determination of Russell's child support obligation for Ryan beyond the date of Ryan's anticipated graduation in June 2010.
[9] Russell also assigned error to the trial court's order for him to pay a portion of Adam's unreimbursed extraordinary health care expense. However, he devoted no portion of his briefing and offered no legal support for this argument. Thus, we need not consider it under RAP 10.3(a)(6).

17

provides that "[t]he court may exercise its discretion to determine the necessity for and the reasonableness of all amounts ordered in excess of the basic child support obligation." The child support order at issue here requires that Russell "pay 63.4 [percent] of unreimbursed extraordinary health care expenses for Ryan, if monthly medical expenses exceed 5 [percent] of the basic support obligation from worksheet line 5 for Ryan, until he graduates from high school." CP at 2029. Thus, in accordance with RCW 26.19.080(2), the trial court determined that while Russell still had a child support obligation for Ryan, he would also have an obligation to pay unreimbursed extraordinary health care expenses. As previously discussed, the trial court properly ordered that Russell was required to pay child support for Ryan beyond his anticipated date of graduation. Because Ryan was still in high school and the trial court's order complies with RCW 26.19.080, we hold the trial court properly exercised its discretion when ordering Russell to pay his proportionate share of Ryan's unreimbursed extraordinary health care expenses.

IV.  POSTSECONDARY SUPPORT FOR RYAN AND ADAM

Russell next argues that the trial court erred by ordering him to contribute to Ryan and Adam's postsecondary educational support. The child support order in this case has always provided that "[t]he parents shall pay for the post secondary educational support of the children. Post secondary support provisions will be decided by agreement or by the court." CP at 456 (December 3, 2004 child support order). Russell did not petition to modify the postsecondary support provision. Instead, he specifically noted that the child support order requires him and Amanda to pay postsecondary support, but that he and Amanda were not able to reach an agreement. Accordingly, as the trial court noted and Russell acknowledged, Russell was required to pay postsecondary support for both Adam and Ryan, but the amount of the payments

18

42959-4-II

and how long Russell was required to make the payments were to be decided by the court because Russell and Amanda were not able to reach an agreement.

A.   Postsecondary Educational Support Obligation

The trial court has broad discretion to order support for postsecondary education. *Childers v. Childers*, 89 Wn.2d 592, 601, 575 P.2d 201 (1978); *see also In re Marriage of Newell*, 117 Wn. App. 711, 718, 72 P.3d 1130 (2003); *In re Marriage of Kelly*, 85 Wn. App. 785, 795, 934 P.2d 1218 (1997). RCW 26.19.090(2) gives the trial court discretion to determine how long to award postsecondary educational support and provides a non-exhaustive list of factors to consider:

> Age of the child; the child's needs; the expectations of the parties for their children when the parents were together; the child's prospects, desires, aptitudes, abilities or disabilities; the nature of the postsecondary education sought; and the parents' level of education, standard of living, and current and future resources.

To continue receiving postsecondary educational support:

> The child must enroll in an accredited academic or vocational school, must be actively pursuing a course of study commensurate with the child's vocational goals, and must be in good academic standing as defined by the institution.

RCW 26.19.090(3). If the child fails to comply with these conditions, the parent's postsecondary educational support obligation is automatically suspended for the period or periods in which the child fails to comply. RCW 26.19.090(3). Additionally, the trial court should not order payment of postsecondary educational support beyond a child's 23rd birthday, except in exceptional circumstances. RCW 26.19.090(5).

Russell contends the trial court failed to address all the factors listed in RCW 26.19.090 and thus the postsecondary educational support order is improper. The trial court, however, specifically noted that it considered the factors from RCW 26.19.090(2) when making its

19

postsecondary educational support order. And although the trial court did not make extensive findings on the record as to each factor, RCW 26.19.090 sets forth no requirement that the trial court explicitly consider the factors on the record. *In re Marriage of Cota*, ___ Wn. App. ___, 312 P.3d 695, 699 (2013). Moreover, "[w]e must presume that the court considered all evidence before it in fashioning the order [on postsecondary education expenses]." *Kelly*, 85 Wn. App. at 793. Thus, the trial court did not err by not explicitly entering findings as to each factor listed in RCW 26.19.090(2).

### 1. Ryan

The trial court ordered Russell to contribute to Ryan's AA degree. The trial court found that Ryan had a plan and was at Clover Park. The trial court further stated Ryan "has a vocation in mind, and that is a two-year degree. It appears to be commensurate with the child's abilities and the child's prospects. He, so far, has had trouble with attendance and, therefore, trouble getting credits, but academically he's doing well or at least appropriate, appropriately." CP at 2064. Because Ryan had yet to begin his postsecondary education, the trial court properly exercised its discretion when it ordered Russell to contribute to Ryan's postsecondary education subject to Ryan's compliance with RCW 26.19.090 and maintaining good academic standing according to the institution.

### 2. Adam

Russell contends that his postsecondary support obligation for Adam should have been suspended from January 2009 through the entry of the trial court's final order in December 2011 because Adam "was never in good academic standing as defined by the institution and was never a full time student." Resp't's Br. at 31. We disagree because Adam was in good academic

20

standing with Pierce College, as required by RCW 26.19.090(3), beginning in spring quarter 2009.

Here, the trial court did not order postsecondary support for the 2009 winter and spring quarters at Pierce College because Adam was not in good academic standing with Pierce College. But in fall 2009 Adam obtained a 4.0 grade point average and increased his cumulative grade point average above a 2.0. Thus, the trial court ordered Russell to pay postsecondary support for Ryan beginning in fall of 2009 through spring of 2012 (when Adam would turn 23), as long as he remained in good academic standing. The trial court also ordered that Russell would get a credit for any class for which he paid that Adam withdrew from or had to retake.

Pierce College defines good academic standing as: "Any student who earns 5 or more credits for each quarter in which they are enrolled, and maintains a 2.0 or better cumulative grade point average will be considered in good academic standing at Pierce College." CP at 1784. On July 6, 2011, the director of student success at Pierce College authored a letter noting that "Adam has maintained a 2.0 or better cumulative grade point average beginning Spring Quarter 2009 and has been in good academic standing with the college since Spring Quarter 2009." CP at 1879. Because the trial court's order complies with RCW 26.19.090 and Pierce College's definition of good academic standing, we determine the trial court properly exercised its discretion when ordering postsecondary educational support for Adam.

B.     Amount of Postsecondary Educational Support Ordered

Amanda argues the trial court erred (1) by holding that the costs of postsecondary support for Ryan be shared by Amanda, Russell, and Ryan in equal one-third shares, and (2) by refusing to make Russell pay his full share of postsecondary support for Adam's first semester at the University of Idaho. We hold the trial court's decision to apportion one-third of Ryan's

21

postsecondary educational expenses to Ryan was a proper exercise of its discretion, but remand for the trial court to apportion the remaining two-thirds between Russell and Amanda based on their respective net incomes. Additionally, we hold the trial court's decision that Russell is not required to pay any more on Adam's fall 2008 semester was a proper exercise of its discretion.

1. Ryan

Regarding the order that Ryan contribute one-third to his postsecondary education, Amanda provides no authority that the trial court erred when apportioning some of the postsecondary educational expense to Ryan. When ruling on postsecondary educational support for Ryan, the trial court stated that it is important for a child to be invested in his own education. Further, because the order is prospective, the trial court noted that Ryan still has the opportunity to get grants, apply for financial aid, and seek part-time employment. We hold that the trial court properly exercised its discretion when apportioning some of the postsecondary education expenses to Ryan.

Regarding Russell and Amanda's contribution, we hold that the trial court's decision to apportion one-third to Amanda and one-third to Russell is based on an erroneous view of the law. Although RCW 26.10.090(1) states the child support schedule is advisory and not mandatory in postsecondary educational support, Division I held that "postsecondary support must be apportioned according to the net income of the parents as determined under [] chapter [26.19 RCW]." *In re Marriage of Daubert*, 124 Wn. App. 483, 505, 99 P.3d 401 (2004), *abrogated on other grounds by McCausland*, 159 Wn.2d 607. Accordingly, we remand for the trial court to apportion the remaining two-thirds of Ryan's AA degree expenses to Amanda and Russell based on their respective incomes.

2. Adam

The trial court found that Russell's $3,275.00 contribution to Adam's fall 2008 semester at the University of Idaho, in which he received no credits, satisfied his obligation for postsecondary educational support for that semester. Amanda argues the trial court's decision is contrary to RCW 26.19.090(3) because generally a parent pays for college and its related costs at the beginning of the quarter or semester and no one knows at that time if the student will meet the academic requirements of RCW 26.19.090(3). Despite Russell's request that Adam attend a community college or in-state university, Adam, with Amanda's support, chose to attend the University of Idaho. Adam did not succeed at the University of Idaho and received no credits for the classes he took; thus, he decided to transfer to Pierce College. Because the trial court has broad discretion to order what is fair and necessary for postsecondary education, we do not disturb the trial court's order regarding Russell's obligation to contribute to Adam's fall 2008 semester. *See Childers*, 89 Wn.2d at 601-02.

V. SYLVAN LEARNING CENTER EXPENSE

Amanda argues the trial court erred by not including the cost of Adam's tutoring at Sylvan Learning Center in his postsecondary educational support. Russell did not respond to this argument.

The trial court has broad discretion to order what is fair and necessary regarding postsecondary support. *Childers*, 89 Wn.2d at 601-02; *Kelly*, 85 Wn. App. at 795. The trial court may include expenses that are sufficiently related to the child's postsecondary education. *Kelly*, 85 Wn. App. at 795.

The trial court orally ordered that Russell contribute to Adam's postsecondary support on June 15, 2011; however, for reasons that are not clear, the paper order reflecting the June 15,

23

2011 oral ruling was not signed until August 5, 2011. In between the oral ruling and the signing of the order, Amanda added the Sylvan Learning Center expense to Adam's post secondary educational expenses, which neither Russell nor the trial court noticed until after signing the order. After a hearing on December 9, 2011, the trial court ordered that Russell was not required to contribute to the Sylvan Learning Center expense and stated,

> I realize that it really is related to his education, but the fact is he's been in college for three and a half years already. The father has—I ordered him to pay expenses going back to the beginning, and this is an extraordinary expense that was incurred unilaterally by the mother without any consultation, without any input, and I'm not going to order him to contribute toward it.

Report of Proceedings (Dec. 9, 2011) at 33. Because the trial court has broad discretion to order what support it finds fair and necessary, the trial court properly exercised its discretion when deciding not to include the Sylvan Learning Center expense in Russell's obligation because it was an extraordinary expense that Amanda incurred without seeking input from Russell.

VI.    REASONABLE ATTORNEY FEES

Amanda argues the trial court erred by failing to award her reasonable attorney fees and expenses due to Russell's intransigence. We hold the trial court erred by finding Russell did not engage in intransigence and remand for a determination of reasonable attorney fees for Amanda.

The decision to award attorney fees is within the trial court's discretion. *In re Marriage of Knight*, 75 Wn. App. 721, 729, 800 P.2d 71 (1994). The party challenging the trial court's decision bears the burden of proving the trial court exercised its discretion in a way that was "clearly untenable or manifestly unreasonable." *Knight*, 75 Wn. App. at 729.

Amanda contends the trial court erred by refusing to look at past history and prior court findings of intransigence. The trial court may award fees under RCW 26.09.140 if one spouse's intransigence caused the spouse seeking a fee award to require additional legal services. *In re*

24

*Marriage of Crosetto*, 82 Wn. App. 545, 563, 918 P.2d 954 (1996). A parent is intransigent where he produces "conflicting information about his income and, by his actions, force[s the other parent] to conduct intense discovery, which increase[s] her legal bills." *In re Marriage of Mattson*, 95 Wn. App. 592, 605, 976 P.2d 157 (1999). If intransigence is established, the financial resources of the spouse seeking the fees are irrelevant. *Crosetto*, 82 Wn. App. at 564.

The trial court found, based solely on Russell's conduct in connection with the instant petition for modification and its related motions, that Russell did not engage in intransigence. The trial court based its decision, in part, on the fact that Russell disclosed over 2,000 pages of financial documents in response to discovery requests. The trial court further noted that Russell acknowledged that he paid some personal expenses through Perler, but that he fully disclosed all his financial information; thus, even though he misstated his income, Russell was not attempting to defraud the court because he provided all the information the court needed to determine his income.

The trial court erred by not finding Russell intransigent. In two prior proceedings, Russell engaged in behavior similar to the instant case by misreporting his income, paying his personal expenses through his business, and turning over voluminous financial records requiring Amanda and the court to incur additional costs and time to determine Russell's true income. Specifically, in 2004 the trial court stated,

> Yes. I know that, Mr. Blank, there's a lot of talk about the production of two banker's boxes of documents being produced, but I was struck by the fact that many of the things I was interested in there was just no documentation for.
>
> There was even difficulty answering simple questions as to what Mr. Blank's salary was. I just think that the production of voluminous material is not persuasive. Having practiced insurance defense for a number of years, I certainly am not swayed by volumes of materials. It's the quality that's given that matters and relevance that matters.

CP at 442. Russell's behavior in the current proceeding was substantially similar to the behavior the trial court twice previously found to be intransigent. In all three cases his behavior was intransigent. Russell's disclosure to the trial court that he used his business to pay personal expenses and providing 2000 pages of financial documents did not cure his intransigence.

In the instant case, Russell initially reported his net monthly income as $5,500.00. After an appeal to this court and multiple hearings and motions on remand, the trial court determined Russell's income was actually $8,195.08, and after this appeal his income will increase further. Russell's practice of misreporting his income and then providing substantial financial documents for Amanda and the trial court to sort through to determine his true income is intransigent. *See Mattson*, 95 Wn. App. at 605 (where a parent provides conflicting information about his income, forcing his former spouse to incur increased legal fees to conduct intense discovery, is evidence of intransigence). Accordingly, we remand for the trial court to enter a finding that Russell was intransigent and award Amanda reasonable attorney fees for her increased legal fees due to Russell's intransigence.[10]

VII. ATTORNEY FEES ON APPEAL

Amanda and Russell request attorney fees under RCW 26.09.140 and RAP 18.1. We have discretion to order a party to pay for the cost of maintaining the appeal and attorney fees in addition to statutory costs. RCW 26.09.140. When awarding attorney fees, we examine the arguable merit of the issues and the parties' financial resources. *In re Marriage of Griffin*, 114 Wn.2d 772, 779, 791 P.2d 519 (1990). In order to receive attorney fees, the parties must file financial affidavits with the court no later than 10 days before oral argument. RAP 18.1(c).

---

[10] The trial court should award only such fees as are reasonable. The amount of Amanda's claim for attorney fees appears on its face to be unreasonable in these circumstances.

26

Here, Russell failed to file a financial affidavit on time, which precludes an attorney fee award. Amanda filed her financial affidavit and after careful review, we find she exhibited sufficient financial need and grant her reasonable attorney fees on appeal.

We remand to the trial court for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Maxa, J.

_____
Spearman, J.

27